**Paul J. MRAZ, et al.**

v.

**AMERICAN UNIVERSAL INSURANCE COMPANY, et al.**

**Civ. No. Y–84–4426.**

United States District Court,
D. Maryland.

Aug. 1, 1985.

Thomas R. Kline, Robert S. Faron, Mary Douglas Dick, Brown, Roady & Gold, Washington, D.C., for plaintiff.

Hartman J. Miller, Baltimore, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

This is an action for a declaratory judgment to determine the rights of the parties under a contract for insurance issued by the defendant, Canadian Universal Insurance Company. Galaxy Chemical, Inc., represented by Paul Mraz and Sally Mraz, as directors and trustees of the assets of Galaxy ("Galaxy"), and Paul Mraz individually, have brought this case seeking a declaratory judgment as to coverage for the claims made against them in *United States, et al. v. Bissell, et al.*, Civil No. Y–83–3745, also pending before this Court. Galaxy and Mraz seek a determination of the duty of Canadian Universal Insurance Company to defend them in the *Bissell* case. In *Bissell*, they are faced with potential liability in litigation filed by the federal government and the State of Maryland for clean-up of an alleged hazardous waste dump site ("the Leslie site") in North East, Maryland under the provisions of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.* and the Maryland Code Health and Environmental Article, § 7–218, *et seq.*

This action was filed in Circuit Court for Cecil County against American Universal Insurance Company on November 14, 1984, and was removed to this Court. On April 3, 1985, the complaint was amended to include Canadian Universal. By stipulation in the pre-trial order, American Universal was dismissed.

A bench trial was conducted on July 10, 1985. At the time, both parties presented evidence and the Court heard argument. Having reviewed the evidence and considered the testimony produced at trial, the Court will now enter judgment in this action. The findings of fact and conclusions of law made herein are in accordance with the provisions of Rule 52, F.R.Civ.P. whether or not specifically identified as such.

Mraz was the founder and president of Galaxy Chemicals, a company engaged in recycling chemical solvents. Galaxy received waste materials from its client companies, recycled those materials into usable solvents and other chemicals, and returned the finished products to the clients. Galaxy produced some residual waste material in the process.

Canadian Universal issued policies to Galaxy providing operations liability coverage for calendar years 1966–1969, for which Galaxy paid premiums. Policies were issued through an agent named Robert Krapf of the Krapf and Kraft Insurance Agency. Defendant does not deny that the policies were written. Those policies also covered Paul Mraz and Sally Mraz, individually, for actions taken within the scope of their responsibilities.

Soon after Galaxy commenced operations, allegations of odors emanating from the plant site began to occur, and there was extensive involvement of the Cecil County Health Department and other state agencies concerning the fumes and possible health hazards from the plant. The allegations of harm began to center on certain drums of material which were stored at the plant before being processed. By 1969, there was such a crescendo of protest that the State entered suit and on September 16, 1970, the plant was declared a public nuisance in the Circuit Court for Cecil County. Also in 1970, a group of eleven citizens from the neighborhood of the plant sued Galaxy, alleging bodily injury occasioned by the noxious odors caused by the plant. Judgment was eventually entered against Galaxy in that suit.

As part of the effort to solve the problems which were the subject of those two actions, Galaxy arranged to dispose of those drums which were the main subject of controversy. The arrangement for the disposal were made with the involvement and cooperation of the state and county health department officials. In August of 1969, drums from the Galaxy Plant were placed on two acres of land in North East, Maryland, known as the Leslie site. The disposal was arranged by Galaxy through its employees Paul Mraz and James Waters, at the direction of, and with the agreement of, Maryland and Cecil County officials. The drums of material, which had been stored at the plant but never processed, were buried in a clay pit on the Leslie property. At that time, Galaxy and health officials thought that the clay would form a natural barrier against any leaking of chemicals from the drums.

Galaxy now claims that immediately upon being dumped, the barrels began leaking into the ground and water in the area and began to cause damage to persons or property at or nearby the Leslie site.

In late 1981 and early 1982, after the passage of CERCLA, the State of Maryland and the Environmental Protection Agency (EPA) investigated the Leslie site and determined that hazardous substances were buried at the site and that those substances had caused or threatened to cause damage to the health of area residents. Based on these findings, EPA and the state removed the buried drums, disposed of contaminated soil, treated contaminated water and took other clean-up action from June through December, 1982.

In 1983, the United States and the State of Maryland filed the *Bissell* suit against Galaxy and Mraz, seeking to recover under CERCLA which created retroactive liability for clean-up costs against those who caused environmental damage. In *Bissell*, the state and the United States allege that in 1969 Galaxy and Mraz arranged for or participated in the disposal of hazardous wastes or substances from Galaxy's manufacturing operations. The complaint alleges environmental damage to the Leslie site and the nearby area, and injury to the health of residents near the site who were exposed to or came in contact with alleged hazardous substances. The state and the United States have also sued other potentially responsible parties who apparently used the dump site to recover money that the state and federal governments spent for clean-up. Some of those parties have filed cross-claims and counterclaims against Galaxy and Mraz.

Following receipt of the complaint in *Bissell*, Mraz notified Canadian of the suit, and requested payment of legal fees and expenses, and indemnification of any potential liability that he and Galaxy may face, under the policy issued in 1969. Canadian declined to defend or indemnify Galaxy under that policy. Galaxy and Mraz then filed this action for declaratory judgment.

In general, an insurer has a duty to defend an insured if there is a claim alleged against the insured which is potentially within the policy coverage. *Brohawn v. Transamerica Insurance Co.*, 276 Md. 396, 347 A.2d 842 (1975). If the allegations of the complaint against the insured are clearly outside of the scope of coverage, however, there is no duty to defend. *Minnick's, Inc. v. Reliance Insurance Co.*, 47 Md.App. 329, 422 A.2d 1028 (1980); *Harleysville Mutual Cas. Co. v. Harris & Brooks, Inc.*, 248 Md. 148, 235 A.2d 556 (1967).

Plaintiffs here allege that Canadian has a duty to defend them in the *Bissell* suit, because the policies issued by Canadian provide coverage for any liability arising out of the allegations of the *Bissell* complaint. Plaintiffs argue that the general liability policy issued by Canadian in 1969 provided coverage for the operations of Galaxy, that they cover this type of injury and property damage which occurred within the policy period, and that all prerequisites for coverage have been met. Defendant counters that there has been no "occurrence" within the meaning of the policy, no damage or loss within the policy period, and that it has no potential liability because of numerous exclusions within the policy.

Canadian has a duty to defendant Mraz and Galaxy in the *Bissell* action if there are allegations in that action that fall potentially within the terms of the Canadian policy. Galaxy and Mraz allege that the United States or Maryland may prove, in the *Bissell* action, that an occurrence in 1969 (the last Canadian policy expired December 31, 1969) caused bodily injury or property damage within the policy triggering coverage. Specifically, the allegations in *Bissell* are: (1) that hazardous substances had in the past been released and threatened to continue to be released from the Leslie site into the air, water, and soil, before the site was cleaned up, (2) that those releases resulted in strong odors in the air and discolored run-off in a nearby creek, (3) that they imposed a possible health threat to residents, and (4) that Galaxy was at least partially responsible. It is necessary, therefore, to determine whether any of these allegations state claims which are potentially within the coverage of that 1969 policy.

The 1969 policy issued by Canadian provided general liability insurance coverage for the operations of Galaxy. It covered personal injury or property damage caused by an "occurrence" within the policy period. The policy contained various exclusions, which excluded coverage for completed operations or products liability, as well as others on which Canadian now seeks to rely. Under the Canadian policies an "occurrence" means an "accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." "Property damage" is defined as "injury to or destruction of tangible property." The last Canadian policy was issued in 1969 and expired on December 31, 1969.

In this case, Galaxy and Mraz assert that the 1969 dumping and the resulting damage constitute an "occurrence" within the meaning of the policy. The occurrence provision and similar policy language has been interpreted to apply to allegations of environmental damage, *see Steyer v. Westvaco Corp.*, 450 F.Supp. 384 (D.Md.1978) (alleged air pollution damage to a Christmas tree farm). Other courts have held that unlawful dumping of hazardous wastes are "occurrences" in the context of CERCLA cost recovery actions, if the resulting damage was unintended or unexpected. *CPS Chemical Company, Inc. v. Continental Insurance Co.*, 199 N.J.Super. 558, 489 A.2d 1265, 1269 (1984). In that case, CPS Chemical sought a declaratory judgment that the insurance company had a duty to defend it against allegations of liability based on claims that the chemical company had generated toxic wastes which were illegally deposited in a city garbage dump. The chemical company had hired a disposal company which deposited the chemical wastes, without the chemical company's knowledge, illegally in the city dump. The court held that the illegal dumping constituted an unexpected or unforeseen event,

thus an "accident" under the policy. (The policy language in *CPS* was similar to that in the instant case, but did not include the requirement that the damage result *during the policy period*. That requirement was contained elsewhere in the policy, however.) The court found that the illegal dumping was not expected or intended from the standpoint of the insured, and that it therefore constituted an occurrence. The court also held that that occurrence happened within the policy period, even though the damage was not discovered until 4–5 years later, after the expiration of the policies, because the allegations in the underlying complaint under the CERCLA alleged damages commencing upon dumping.

■ In another similar case, *Buckeye Union Insurance Company v. Liberty Solvents and Chemicals*, 17 Ohio App.3d 127, 477 N.E.2d 1227, 1233 (Ohio App.1984), the court noted that the term "occurrence" was broader than the term "accident" and held that the "releases and threatened releases" of hazardous waste materials alleged in the underlying CERCLA complaint were "occurrences" within the common understanding of that term and within the policy definition in question. That definition was similar to the definition in the Canadian policy in this case. The court further found that the releases of chemical substances into the environment from a hazardous waste dump where the chemical company had contracted to dispose of its wastes was neither expected nor intended by Liberty Solvents, since it was the result of leakage of the drums after they were dropped, punctured, ruptured, etc. A similar conclusion follows here. The drums which were disposed of by Galaxy and Mraz were legally disposed of, and the resulting leakage was unintended and unexpected because the clay pit was supposed to form a natural barrier against any such leakage. Thus, under the reasoning used in *Buckeye Insurance*, the dumping and resulting leakage constitute an "occurrence" within the policy terms.

■ Defendant argues that the 1969 disposal at the Leslie site was not unexpected or unintended, and therefore is not within the policy terms. In *American States Insurance Company v. Maryland Casualty Company, et al.*, 587 F.Supp. 1549 (E.D. Mich.1984), the court held that the release of toxic chemicals from a dump site was not "sudden or accidental" because dumping of wastes was a part of the insured's usual business, and thus was not an "occurrence" within the meaning of the policy. The Court obviously rested its decision on a holding that the dumping itself must have been accidental for the injury to be an "occurrence." However, *Steyer v. Westvaco*, stated: "it is the opinion of this court that the words 'unexpected or unintended' or words of similar import with respect to the definition of 'occurrence' do not refer to unknown, unexpected, or unintended emissions from the Westvaco plant, but refer instead to unknown, unexpected, or unintended damage of the type complained of by the plaintiffs." 450 F.Supp. at 388. That holding, made in the context of air pollutants emitted from a plant, is analogous to a holding in this case that the words "unexpected or unintended" refer to the leakage and resulting damage, not to the actual dumping itself. The Court in *Buckeye Insurance*, 477 N.E.2d at 1233, also adopted that reasoning. In the context of toxic waste disposal, where the dumping was obviously intended and even necessary, the better conclusion seems to be that reached in *Steyer* and *Buckeye*. The words "unexpected or unintended" in the policy must refer to the leakage, not to the actual dumping. In this case, the leakage and the resulting damage were indeed unexpected and unintended, and as such, come within the policy definition of "occurrence."

Defendant also alleges that the dumping did not constitute an occurrence because it did not "result, *during the policy period*, in property damage ..." in that any damage in this case occurred after the policy expired in 1969. Galaxy and Mraz assert that the drums disposed of at the Leslie site began leaking immediately upon disposal, and began to cause damage at the point. Defendant points, however, to the fact that the EPA and the state did not

begin clean-up operations or notify Galaxy of any problem until 1981–82, and claims that at any rate, the damage did not occur in 1969, during the policy period. Defendant points to many cases, none of which involve the disposal of hazardous wastes, which hold that for purposes of defining "occurrence," coverage is based not upon the time when the accident happened, but upon the time when the damage was discovered. *See, e.g., Aetna Casualty and Surety Co. v. PPG Industries*, 554 F.Supp. 290 (D.Ariz.1983) (improper installation of polyurethane foam); *Bartholemew v. Insurance Company of North America*, 502 F.Supp. 246 (D.R.I.1980) (products liability). Thus, defendant argues, because no damage was discovered at the Leslie site until 1981, there was no loss during the policy period and no responsibility for coverage.

■ In a case more directly on point, however, the New Jersey Superior Court held, in a case involving the duty to defend a chemical company against an action under CERCLA, that the "time of discovery of an accident does not determine when it took place. The complaint [in the underlying action] alleges damages commencing with the date of dumpings. For determination of the duty to defend under those policies, it is not necessary now to resolve the factual accuracy of those allegations." *CPS Chemicals Co., supra*, 489 A.2d at 1269. The complaint in *Bissell* may be construed to allege that environmental damage began to take place immediately in 1969 upon dumping at the Leslie site creating the potential for liability within the scope of coverage of the 1969 policy. Canadian's duty to defend is triggered by the existence of any potential for liability; the determination of whether there must be actual coverage must await the outcome of the *Bissell* action. *See CPS Chemical Co.* at 1269.

■ Defendant has also claimed that the damage asserted in the *Bissell* action is not "property damage" within the meaning of the policy term. This assertion is without merit. Property damage as defined in the policy is "injury to or destruction of tangible property." The *Bissell* suit alleges that the leakage from Galaxy's wastes caused contamination of soil and water which resulted in the need for the clean-up. Water contamination has been held to be "property damage" for insurance policy purposes, *see Port of Portland v. Water Quality Insurance Syndicate*, 549 F.Supp. 233 (D.Oreg.1982); *Lansco, Inc. v. Dept. of Environmental Protection*, 138 N.J.Super. 275, 350 A.2d 520 (1975), *aff'd*, 145 N.J.Super. 433, 368 A.2d 363, *cert. denied*, 73 N.J. 57, 372 A.2d 322 (1977), and certainly the leakage of hazardous wastes was assumed to be "property damage" in *CPS* and *Buckeye*. Canadian's assertions that the damage alleged in the *Bissell* suit is not "property damage" are, in the words of the *Port of Portland* court, 549 F.Supp. at 235, "untenable."

Defendant has also claimed, in addition to claiming that the leakage alleged in *Bissell* is not within the basic definition of "occurrence," that the leakage is excluded from coverage by one of the various "exclusions" in the 1969 policy. Canadian also asserts that Galaxy did not comply with certain requirements of the policy.

Canadian asserts, first, that Galaxy did not give timely notice of the claims against it as required under the policy. Condition 4 of the policy requires that in the event of an "occurrence," the insured must give notice to the insurer as "soon as practicable." In this case, Canadian asserts that if Galaxy knew the drums were leaking in 1969, and if the occurrence took place in 1969, then Galaxy had a duty to notify Canadian of that fact. Instead, Galaxy notified Canadian of its potential liability when it received the complaint filed in the *Bissell* action. Canadian claims that the notice was not timely given and that therefore there is no duty to defend or to grant coverage.

■ Plaintiffs gave notice "as soon as practicable" after they had reason to believe that their actions may have resulted in possible liability triggering coverage. *State Farm Mutual Automobile Insurance Co. v. Hearn*, 242 Md. 575, 219 A.2d 820 (1966). Notice was given to Canadian within one week of the filing of the *Bissell*

complaint. Plaintiffs note that the insurer must show some actual prejudice from the allegedly inadequate notice, *Washington v. Federal Kemper Insurance Co.*, 60 Md. App. 288, 482 A.2d 503 (1984). Canadian cannot establish any prejudice in this case. Earlier notice would not have been helpful to Canadian when there was nothing to defend. While it may seem inconsistent for the plaintiffs to argue that although the occurrence took place in 1969, there was no duty to notify the insurer until the suit was filed, that reasoning is consistent with the requirement that the insured give notice as soon as he has reason to believe that his actions may have resulted in possible liability. Until the passage of CERCLA in 1980, there was no possibility of liability, and there was no reason to believe that there was possible liability regarding the Leslie site until the time the *Bissell* suit was filed. There is no reason to conclude that notice was not reasonably given in this case, especially since Canadian has made no claim of prejudice.

■ Canadian also asserts that Galaxy did not comply with another provision of the policy, Condition 4, which required the insured to take steps to prevent further injury when an occurrence takes place. Canadian asserts that if the plaintiffs knew that the drums were leaking when they were disposed of 1969, they should have taken steps to prevent further leakage. Plaintiffs assert that disposal in a clay pit was recognized as the best method of disposal in 1969 and claim that they were taking steps to prevent further injury when they used the Leslie site. Galaxy has complied with Condition 4, and the potential for coverage exists to the extent that it would trigger a duty to defend.

■ Defendant has also claimed that even if there was an "occurrence," coverage is nevertheless excluded within the terms of the policy. Defendant claims that this "occurrence" falls within exclusion (k) of the policy. That provision states that the policy does not apply to "property damage to the named insured's products arising out of such products or any part of such products." Defendant claims that the drums buried at the Leslie site were part of

the plaintiff's product, and therefore covered by this exclusion, and that the cost of cleaning up that product falls within this exclusion also. *See Carpole's, Inc. v. Insurance Co. of North America*, 544 F.Supp. 6 (D.Minn.1982) ("to find coverage for the cost of removing the product where coverage for the product itself is excluded would effectively negate the exclusion.") Plaintiffs contend that the material stored in the drums buried at the Leslie site was not its "product," since it had never been processed, but were instead some form of waste which needed disposal in the ordinary course of business. In *CPS Chemical, supra*, 489 A.2d at 1270, the court held that "industrial wastes not intended for consumption, sale or use by others are not 'products' in the view of this court, nor would a reading of the policy reasonably indicate that they were so intended by the parties." In this case, plaintiff Mraz testified that some of the drums contained material belonging to duPont which had never been processed, and that others contained legitimate waste products left after Galaxy processing. None of these materials were "product(s)" of Galaxy, therefore, exclusion (k) does not apply.

■ Basically, the same argument applies with respect to the "completed operations/products hazard" exclusion, (m). That provision excludes coverage for damage which occurs after the operations have been completed or abandoned and away from the insured's premises, and for damage arising out of the named insured's product. Defendant claims that the drums abandoned at the Leslie site constituted completed operations, and that because the damage occurred after the drums were abandoned and away from the Galaxy premises, that damage is not covered because of this exclusionary provision. This argument ignores the fact that the "completed operations" provision is meant to mean the same thing for a service company that a "products liability" provision would mean for a manufacturing company, *see Steyer v. Westvaco Corp.*, 450 F.Supp. at 394, n. 10, *CPS Chemical*, 489 A.2d at 1270, and to refer to liability stemming

from the services, materials, or structures which the insured introduces into the marketplace. The burial of these drums at the Leslie site does not involve construction or service operations of plaintiff, and the material buried there is not a "product" of the plaintiffs. Therefore, coverage should not be precluded by the completed operations hazard exclusion in the policy. This conclusion was reached in a very similar situation in *CPS*, 489 A.2d at 1270, and this Court is satisfied that it is appropriate in this case.

■ Defendant asserts that coverage is precluded by certain other provisions, namely (1), (n) and (o). Exclusion (1) excludes "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof or out of materials, parts or equipment furnished in connection therewith." Exclusion (n) excludes damage "arising out of operations performed for the insured by independent contractors ..." Defendant asserts, without much discussion, that these exclusions should apply because Galaxy contracted to have the offending materials hauled away to the Leslie site. The *Bissell* action, however, seeks to hold plaintiffs liable for their own actions in disposing of wastes, and not for any damage arising from contractors' actions. Whether there was separate or additional damage caused by the contractors' actions may be a subject of the underlying action. At this point, it is sufficient that *Bissell* contains allegations which may result in Galaxy's liability which is within the policy coverage.

■ Exclusion (o) excludes underground property damage "to wires, conduits, etc. ... caused by and occurring during the use of mechanical equipment for the purpose of grading land ... filling ..." This exclusion obviously does not apply and does not merit discussion.

Defendants have asserted two other defenses. First, they assert that the action is barred by the applicable statute of limitations. Galaxy filed suit seeking a declaratory judgment in the Circuit Court for Cecil County on November 14, 1984. On April 3, 1985, the complaint was amended to include Canadian Universal. The applicable statute of limitations is the three year statute in the Maryland Code, Courts and Judicial Proceedings article, § 5–101. As the last policy expired at the end of 1969, and because Galaxy knew that Canadian denied coverage in the 1970 personal injury actions resulting from the plant fumes, Canadian asserts that this declaratory judgment action should have been brought to determine liability for coverage before now. Galaxy knew in 1969 that Canadian contested coverage regarding the fumes, and in fact filed a declaratory judgment action to determine the parties' rights. That action was settled. Canadian now asserts that plaintiffs should have proceeded to judgment in that action, and that the present action is time-barred. Canadian argues that the action accrued when Galaxy discovered that Canadian would not perform, under the "discovery rule" adopted in Maryland, *see Levin v. Friedman*, 271 Md. 438, 317 A.2d 831 (1974) (holding that the right of action accrued upon failure to perform contract). Plaintiffs argue that the statute of limitations did not begin to run until they had actual notice of the potential liability they faced, *see Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981); *Harig v. Johns-Manville Products Corp.*, 284 Md. 70, 394 A.2d 299 (1978) (adopting discovery rule in tort actions). In *American Home Assurance Company v. Osbourn*, 47 Md.App. 73, 422 A.2d 8 (1980), the Court held that the statute of limitations began to run on the day the insured discovered that the insurance company would not defend.

■ The fact that Galaxy knew that Canadian denied coverage in the 1970 actions regarding the fumes coming from the Galaxy plant did not necessarily mean that Galaxy knew that Canadian would deny coverage in this type of action. Furthermore, the plaintiffs could not have brought a declaratory judgment action earlier because there was no case or controversy between these two parties until there was actually a claim against Galaxy which Canadian declined to defend. That did not occur until the state and the United States

filed the *Bissell* action in October of 1983. This action was filed, and amended to include Canadian, well within three years of that date.

 Finally, Canadian asserts that a release signed in connection with the settlement of the 1970 declaratory judgment action releases Canadian from any obligation in this suit. In 1970, lawsuits were pending in Caroline County regarding the fumes generated by the Galaxy plant. Canadian maintained that there was no coverage under their policies for this type of claim, and filed a declaratory judgment action in federal court to determine their rights. After judgments were entered for the plaintiffs in the personal injury actions a settlement was reached in the declaratory judgment action. As part of that settlement, the parties signed an "Agreement and Release" which Canadian now claims released any potential liability of Canadian under the policy issued in 1969.

Although the Release signed by the parties does contain broad language, it is clear from reading the entire Agreement and Release that the release was no broader than the events and circumstances which were the subject of the state court personal injury suits. The introduction to the release contains several "whereas" clauses which set out the circumstances on which the release is based, and it is evident that the only real concern of the parties were the personal injury claims and future claims based on the same alleged injury. Neither party anticipated the type of claim which is involved in this lawsuit, and the release was not intended to deal with such a claim. Canadian cannot rely on this defense.

The defenses asserted by Canadian are without merit and the damage claimed in the *Bissell* suit alleges an "occurrence" within the policy period, is a claim potentially within the Canadian policy coverage. Canadian therefore has a duty to defend this action. Whether there is indeed liability for coverage must await the outcome of the *Bissell* action.

Judgment will be entered in favor of the plaintiff.