**RHONE–POULENC BASIC CHEMICALS COMPANY, a Delaware corporation, Defendant–Below, Appellant,**

v.

**AMERICAN MOTORISTS INSURANCE COMPANY, an Illinois corporation, Plaintiff–Below, Appellee.**

Supreme Court of Delaware.

Submitted: Sept. 9, 1992.
Decided: Nov. 18, 1992.

Thomas R. Hunt, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Denis V. Brenan and Glen R. Stuart, Morgan, Lewis & Bockius, Philadelphia, Pa., and Robert N. Sayler (argued), Douglas R. Wright and Marc S. Mayerson, Covington & Burling, Washington, D.C., for appellant Rhone–Poulenc Basic Chemicals Co.

Robert K. Beste, Biggs & Battaglia, Wilmington, John Chesney (argued), and David Abernethy, Drinker Biddle & Reath, and S. Elizabeth Evans, Washington, D.C., for appellee American Motorists Ins. Co.

Gary W. Aber and Donald L. Gouge, Jr., Heiman, Aber & Goldlust, Wilmington, and Barry R. Ostrager and Robert F. Cusumano (argued), Simpson Thacher & Bartlett, New York City, for appellee Travelers Indem. Co.

Before VEASEY, C.J., HORSEY and MOORE, JJ.

VEASEY, Chief Justice:

This is an interlocutory appeal[1] from two orders of the Superior Court entered on January 16, 1992 and January 31, 1992, respectively,[2] granting summary judgment against Rhone–Poulenc Basic Chemical

---

1. Interlocutory appeals, pursuant to Supreme Court Rule 42, can serve a beneficial purpose in the administration of justice by advancing the termination of litigation and saving time in the trial courts if an important threshold question can be resolved, and the resolution of the question will save substantial time and expense. Certification of the present interlocutory appeal is appropriate because the orders appealed from determine a substantial legal issue, establish appellees' legal right to deny insurance coverage, and will serve the interests of justice and judicial economy. *See Rhone–Poulenc Basic Chemicals Co. v. American Motorists Insurance Co.,* Del.Supr., C.A. No. 95, 1992, Holland, J. (Mar. 11, 1992). Nevertheless, because interlocutory appeals may cause unnecessary delay and there is substantial danger of abuse, the Court cautions against the practice of a series of applications for interlocutory appeals when such a practice could delay or interrupt significantly the orderly progress of cases.

2. The January 31, 1992 order denied appellant's motion for reconsideration of the January 16, 1992 order.

Company ("RPB") in a declaratory judgment action filed by certain insurance carriers (the "insurance carriers"). The insurance carriers are National Union Fire Insurance Company of Pittsburgh ("National Union"), Travelers Insurance Company ("Travelers"), and American Motorists Insurance Company ("AMICO").[3] The insurance carriers sought a declaration that they are not obligated to defend or indemnify RPB under standard-form comprehensive general liability ("CGL") insurance policies which they issued to Stauffer Chemical Company ("Stauffer"), RPB's predecessor.[4] The underlying dispute involves the proper construction of a mitigation provision in the AMICO and Travelers policies that requires the insured promptly to take, at its expense, reasonable steps to mitigate damages.

## TYBOUTS CORNER LANDFILL

The relevant facts in this appeal are not in dispute. The issue before the Superior Court and this Court is purely a legal one. Stauffer operated a polyvinyl chloride ("PVC") manufacturing plant in Delaware City, Delaware between 1966 and 1981. The plant generated two principal wastes: (i) polyvinyl chloride resin and (ii) ethylene dichloride ("EDC") sludge.[5] These wastes were disposed of at a municipal landfill located near the Stauffer facility in New Castle County Delaware at Tybouts Corner. The acts of disposal took place from 1969 until July of 1971 when the landfill reached its capacity and was closed.[6] By the time the landfill ceased operating, Stauffer had dumped some 4.2 million pounds of EDC sludge and approximately 26 million pounds of other industrial wastes

at the Tybouts Corner site. The sludge was transported to the landfill in open 55–gallon drums and was poured directly into the ground.

Pursuant to State permitting requirements, the County established a program for testing the hydrological characteristics of the surface and subsurface waters at the landfill. In February 1969 the University of Delaware was employed to monitor the quality of the groundwater at Tybouts Corner and to issue periodic reports to the State and County. Data collected by the University between July 1969 and June 1971 indicated that leachate from the landfill was percolating downward through the soil into an aquifer. Although the reports indicated a progressive deterioration of the groundwater, the level of pollution was not considered to be serious at that time. It was not until May 1976 that the State Department of Natural Resources and Environmental Control ("DNREC") informed the County that a private well near Tybouts Corner was contaminated and that the landfill was the probable source. By 1984 the site was ranked second on the EPA National Priorities List.

## PROCEDURAL HISTORY

On October 4, 1980, the federal government filed suit against Stauffer pursuant to § 7003 of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6973, and §§ 104, 106, and 107, of the Comprehensive Environmental Response, Conservation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9604, 9606, 9607, and 9613. *United States v. New Castle County*, C.A. No. 80–489 (D.Del. filed Oct. 4, 1980). The government sought

---

**3.** Travelers Insurance Company is an intervenor in the present action.

**4.** Stauffer Chemical Company was involved in a complex series of mergers and acquisitions during the 1980s. Although the company survived, it now does business as Rhone–Poulenc Basic Chemicals Company, a Delaware corporation.

**5.** Stauffer used EDC, a powerful solvent, to clean its PVC reactors because it was cheaper than manual cleaning. EDC has been considered a dangerous toxic agent since 1932. *See*

*Toxicity of EDC,* 98 J.Am.Med.Ass'n 1401 (Apr. 16, 1932).

**6.** The State of Delaware required New Castle County to comply with the permit requirements of both the State Water and Air Resources Committee and the Board of Health. Although the State's Certificate of Approval for the landfill prohibited the dumping of hazardous and industrial wastes without the approval of the Board of Health, there is substantial dispute as to the degree to which the County complied with the regulation.

injunctive relief to abate any danger the waste at Tybouts Corner posed to the health and welfare of area residents and the environment. In addition, the government sought reimbursement for costs incurred in responding to the contamination and a declaratory judgment awarding monies for future remediation. The action was settled in April 1989 when RPB and the other parties to the litigation entered into a consent decree. Pursuant to the consent decree, RPB was required to share the expense of designing and implementing a remediation plan at the site. In order to foreclose the possibility of having to indemnify RPB for the environmental liability it incurred, AMICO, National Union, and Travelers filed a declaratory judgment action in Superior Court seeking a declaration that they are not liable under the respective CGL policies they issued to Stauffer. In the procedural context of cross-motions for summary judgment, the trial court ruled that a mitigation provision in the AMICO and Travelers policies precludes coverage for the cost of measures taken or to be taken to prevent the further release of contaminants from the landfill. *National Union Fire Insurance Co. of Pittsburgh v. Rhone–Poulenc Basic Chemicals Co.*, Del.Super., C.A. No. 87C–SE–11, slip op. at 37, Poppiti, J., 1992 WL 22690 (Jan. 16, 1992). RPB's motion for reargument was denied on January 31, 1992, 1992 WL 22689, and this appeal followed. We affirm.

## CONSTRUCTION OF CONDITION 4(a) OF THE INSURANCE POLICIES

Stauffer purchased three standard-form CGL insurance policies from AMICO covering the period January 1, 1969 through March 1, 1971.[7] Each of the CGL policies contains a condition imposing a duty upon the insured to pay for the prevention of further damage once an accident or injury occurs. Condition 4(a) expressly states:

---

7. The CGL policies Travelers issued provided the company with similar coverage from March 1, 1971 until July 1, 1977.

8. The Travelers policies contain a similar condition that provides:

4. Insured's Duties in the Event of Occurrence, Claim or Suit (a) ... The named insured shall promptly take at his expense all reasonable steps to prevent other bodily injury or property damage from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.[8]

RPB argues that the failure of the drafter to include the mitigation provision in the list of policy exclusions negates any intended preclusionary effect. RPB further contends that the real purpose of the clause was to require the insured to take prompt steps to avoid a similar but different injury-producing event. The insured concludes that the reasonable steps which must be taken can never apply to remedial determinations taken after the fact because liability-avoiding measures cannot logically be taken after liability for an injury has been assessed. Rejecting RPB's reasoning, the trial court construed the mitigation provision as precluding from coverage the cost of all preventive measures. The sole issue on this appeal is the proper construction of the mitigation provision in Condition 4(a).

■ The proper construction of any contract, including an insurance contract, is purely a question of law. *Aetna Cas. and Sur. Co. v. Kenner*, Del.Supr., 570 A.2d 1172, 1174 (1990). Accordingly, we review *de novo* for legal error the Superior Court's decision. *Rohner v. Niemann*, Del.Supr., 380 A.2d 549, 552 (1977).

■ Clear and unambiguous language in an insurance policy should be given its ordinary and usual meaning. *Johnston v. Tally Ho, Inc.*, Del.Super., 303 A.2d 677, 679 (1973). Absent some ambiguity, Delaware courts will not destroy or twist policy language under the guise of construing it. *Hallowell v. State Farm Mut. Auto. Ins. Co.*, Del.Super., 443 A.2d 925, 926 (1982). "[W]hen the language of an insurance contract is clear and unequivocal, a party will

All expenses incurred by the insured to prevent other bodily injury or property damage from arising out of the same or similar conditions shall not be recoverable under this policy.

---

be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented." *Id.* To the extent that ambiguity does exist, the doctrine of *contra proferentum* requires that the language of an insurance contract be construed most strongly against the insurance company that drafted it. *Steigler v. Insurance Company of North America,* Del.Supr., 384 A.2d 398, 400 (1978).

A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings. *Hallowell,* 443 A.2d at 926. Ambiguity does not exist where the court can determine the meaning of a contract "without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." *Holland v. Hannan,* D.C.App., 456 A.2d 807, 815 (1983). Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty. *Zullo v. Smith,* Conn.Supr., 179 Conn. 596, 427 A.2d 409, 412 (1980). The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. *Steigler,* 384 A.2d at 401 (contracts should be read to accord with the reasonable expectations of a reasonable purchaser); *see also, State v. Attman/Glazer,* 323 Md. 592, 594 A.2d 138, 144 (1991).

Three different federal courts have similarly construed the mitigation clause presently at issue. The consensus strongly suggests that the clause is reasonably susceptible of only one interpretation. In the case of *Chemical Applications Co., Inc. v. Home Indemnity Co.,* 425 F.Supp. 777 (D.Mass.1977), the mitigation provision was construed for the first time as "impos[ing] a duty on [the insured] to take steps to prevent further injury—to correct the fault—[but] not to repair or restore what has already occurred." *Id.* at 778. The court carefully noted that the insurance carrier remained liable for damages that had already accrued, thus ensuring that the agreement to which the parties originally assented was preserved.

The provision was next construed nearly seven years later in the case of *Mraz v. American Universal Ins. Co.,* 616 F.Supp. 1173 (D.Md.1985), *rev'd on other grounds sub nom., Mraz v. Canadian Universal Ins. Co., Ltd.,* 804 F.2d 1325 (4th Cir.1986). Galaxy Chemical, Inc. ("Galaxy") was a corporation engaged in the recycling of chemical solvents. Mraz was the founder and president of Galaxy. Soon after the plant opened, fumes began emanating from drums of unprocessed chemicals stored at the facility and the plant was declared a public nuisance. Galaxy then arranged to dispose of the controversial drums with the assistance of state and county health officials. At that time it was widely believed that "clay would form a natural barrier against any leaking of chemicals from the drums." 616 F.Supp. at 1176. Consequently, company and state officials disposed of the drums by burying them in a clay pit located on two acres of land known as the Leslie site. Although the drums were disposed of in the most technologically advanced method available at the time, the Environmental Protection Agency ("EPA") declared the site a potential health hazard to area residents several years later. The site was eventually remediated by the State of Maryland and the EPA in 1982. In an effort to recoup remediation expenditures, Mraz and Galaxy were both subsequently sued in 1983 by the state and federal governments under CERCLA. When Mraz notified his insurance carrier of the litigation, it refused to indemnify and defend him and Galaxy under the policy it issued in 1969. In an action by the insureds for declaratory judgment against the insurance company, one defense the insurer raised was that coverage was precluded because Galaxy failed to comply with Condition 4 of the policy "which required the insured to take steps to prevent further injury when an occurrence takes

place." *Id.* at 1180. The insurer argued that Galaxy should have taken steps to prevent further leakage if the company was aware of the problem when it disposed of the drums. Although the insurer correctly construed the mitigation provision, it overlooked the fact that the disposal method Galaxy used was the most technologically advanced method available in 1969. *Id.* Viewing the disposal method used by Galaxy as a measure intended to prevent future environmental damage, the court held that Mraz took sufficient steps to satisfy the mitigation provision and thereby triggered the insurer's duty to defend. *Id.* RPB's reliance on this case is misplaced because Galaxy took steps to mitigate further personal injury or property damage "from arising out of" the same or a similar condition. Unlike Galaxy Chemicals, RPB completely disavowed its duty promptly to take any measures to mitigate further damages "from arising out of" the Tybouts Corner landfill.

The provision at issue here was most recently interpreted by the United States District Court in Delaware in an early environmental liability case involving the Tybouts Corner landfill. In the case of *New Castle County v. Hartford Acc. and Indem. Co.*, 685 F.Supp. 1321 (D.Del.1988), Senior District Judge Latchum examined an identical mitigation clause that was included in a policy New Castle County purchased from the Insurance Company of North America ("INA"). Citing *Chemical Applications* as persuasive authority, the Court held that "under the mitigation provision the insured, at its expense, would normally be required to correct any fault necessary to prevent further injury." *Id.* 804 F.2d at 1331. The Court further classified the remedies sought into three categories: (i) compensation for injuries suffered by the plaintiffs; (ii) injunctive relief compelling the County either to clean up the contaminants released by the landfill or to compensate the plaintiffs for costs incurred by the same; and/or (iii) injunctive relief forcing the County to take actions necessary to prevent future harm. *Id.* at 1332. Discriminating among the various remedies sought, the court held that INA was liable only under the first two categories. The carrier was held to be exempt from liability under the third category because it involved remedial costs required to prevent the future release of contaminants from the site. *Id.*[9]

In construing the mitigation provision, this Court cannot disregard other cases that have excluded coverage for preventive measures even in the absence of a mitigation provision in the insurance contract. See *Aerojet–General Corp. v. San Mateo County Superior Court*, Cal.Ct.App., 211 Cal.App.3d 216, 258 Cal.Rptr. 684 (1989); *Boeing Co. v. Aetna Cas. & Sur. Co.*, Wash.Supr., 784 P.2d 507, 516 (1990) (costs owing because of property damages are remedial measures taken after pollution has occurred, but preventive measures taken before pollution has occurred are not costs incurred because of property damage); *Aerojet–General Corp. v. San Mateo County Superior Court*, Cal.Ct.App., 211 Cal.App.3d 216, 257 Cal.Rptr. 621, 635 (1989) (expenditures to prevent future pollution would not be causally related to property damage and would not be covered as damages under a CGL policy). These courts reasoned that the cost of preventive measures are not "because of property damage" as is required under standard CGL policies. Rather, as the trial court found, they are costs incurred to prevent the further release of contaminants. *National Union Fire Insurance Co. of Pittsburgh v. Rhone–Poulenc Basic Chemicals Co.*, Del.Super., C.A. No. 87C–SE–11, slip op. at 37, Poppiti, J., 1992 WL 22690 (Jan. 16, 1992). Public policy clearly favors imposing upon insureds a duty to mitigate damages. In the absence of such a rule, insureds could sit back and allow environmental damage to accumulate until they are compelled to mitigate damages through litigation. The provision at issue here is consistent with that policy.

---

**9.** While questions concerning the extent to which preventive measures encompass remedial action may be relevant to the underlying litigation, this issue is not before the Court and will not be addressed herein.

The plain language of Condition 4(a), the consistency with which the three other jurisdictions noted above have construed the provision, and strong public policy concerns compel the conclusion that the mitigation clause is subject to only one reasonable interpretation. Thus, the doctrine of *contra proferentum* does not apply. In order for an insured to establish the contractual liability of an insurer for breach of an insurance contract, the insured must show that he has complied with all conditions precedent to the insurer's performance. *Casson v. Nationwide Ins. Co.*, Del.Super., 455 A.2d 361, 365 (1982). By disregarding its duty to mitigate further damage, RPB failed to satisfy an express condition precedent to performance under the policy agreement. The Superior Court properly held that the mitigation provisions in the policies issued by AMICO and Travelers preclude coverage for the cost of measures taken or to be taken in order to prevent the further release of contaminants from Tybouts Corner.

## CONCLUSION

The mitigation provision in the three CGL policies RPB purchased from AMICO is properly construed as precluding coverage for the cost of measures taken or to be taken to prevent the further release of contaminants from the Tybouts Corner municipal landfill. The reasonable expectations of the purchaser can go only as far as the language of the contract will permit. *Steigler*, 384 A.2d at 401. Based upon the clear and unambiguous language of the mitigation provision, the decision of the Superior Court is AFFIRMED and the action is REMANDED for further proceedings not inconsistent with this opinion.