NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-2333
_____

MARY E. D'ORAZIO,

Appellant

v.

HARTFORD INSURANCE COMPANY
also known as THE HARTFORD

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-00403)
District Judge:  Honorable J. Curtis Joyner

_____

Submitted Under Third Circuit LAR 34.1(a)
January 26, 2012

Before:  AMBRO, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed: January 27, 2012)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Mary D'Orazio appeals the District Court's summary judgment in favor of

Hartford Underwriters Insurance Company.  We will affirm.

I

Because we write for the parties, who are well acquainted with the case, we recount only the essential facts and procedural history.

D'Orazio was involved in a motor vehicle accident on November 17, 2007. At the time of the accident, she was insured by Hartford. The insurance policy at issue provided "personal injury protection benefits . . . if incurred within 2 years from the date of the accident causing bodily injury." Personal injury protection benefits, in turn, covered "[r]easonable and necessary" medical expenses and "[l]oss of wages, salary or their equivalent, net of taxes, for work an insured would have performed had [s]he not been injured." Hartford had "no duty to provide coverage . . . unless there ha[d] been full compliance with the following duties: . . . [to] [c]ooperate with [Hartford] in the investigation, settlement or defense of any claim or suit." In addition, D'Orazio had to "give [Hartford] written proof of claim" no more than "2 years after expenses [were] incurred."

D'Orazio submitted an application to Hartford for personal injury protection benefits for injuries sustained in her accident, citing "[j]ust the normal body 'snap' upon impact. Aching neck + shoulders, back. Some numbness + pain in legs—intermittent headache." She also indicated that she was unaware of the amount of medical expenses she had incurred and that she was looking for a job.

2

Hartford covered D'Orazio's medical expenses while she underwent physical therapy. On April 2, 2008, Dr. Frank Sarlo noted that D'Orazio "started her physical therapy," but that "it really seem[ed] to flare her pain." On May 28, 2008, D'Orazio was "doing about the same" but reported "pretty significant pain after sitting for just short periods of time." She was "unwilling to return to physical therapy" because she felt it "really made her pain a lot worse." Dr. Sarlo concluded that, "[a]t this stage, there is likely very little from an interventional spine perspective or physical therapeutic perspective that would likely help" relieve D'Orazio's pain.

D'Orazio also submitted a claim to Hartford for wage loss benefits, stating that she had been employed as an architect since January 2008 but had been unable to work between March 28 and April 25 of that year. Hartford requested a disability note from D'Orazio's doctor for the dates she was out of work. Because D'Orazio never responded to Hartford's request, Hartford took no action on her wage loss claim.

On July 9, 2008, Dr. Peter Bandera performed an independent medical examination on D'Orazio at Hartford's request. After the examination, he noted:

> It appears the treatment to date in terms of physical medical and rehabilitation have been appropriate. . . . There is a direct causal relationship between the above diagnosis and her injury of 11/17/07. No further therapy or diagnostic testing is felt necessary in light of essentially normal examination. Surgery would not be indicated. . . . It is felt that she can execute normal activity without restrictions. She does not specifically need any household help/transportation/medical equipment or further diagnostic testing as it would relate to her November 2007 accident.

Based on this report, Hartford discontinued D'Orazio's medical benefits.

Following the discontinuance of her medical benefits, D'Orazio filed suit in state court. Hartford removed the case to federal court, and D'Orazio filed an amended complaint alleging breach of contract and bad faith based on Hartford's failure to pay her medical bills or wage loss claim. After concluding that Delaware law applied, the District Court granted summary judgment to Hartford. D'Orazio filed this timely appeal.[1]

II

On appeal, D'Orazio claims the District Court erred when it granted summary judgment for Hartford on her claims for medical benefits and wage loss.[2] We disagree, essentially for the reasons explained by the District Court in its cogent opinion.

D'Orazio's breach of contract claims are governed by Delaware law. "In order for an insured to establish the contractual liability of an insurer for breach of an insurance contract, the insured must show that [s]he has complied with all conditions precedent to the insurer's performance." *Rhone-Poulenc Basic Chems. Co. v. Am. Motorist Ins. Co.*, 616 A.2d 1192, 1198 (Del. 1992) (citation omitted). Applying that standard, the District Court held that D'Orazio failed to cite a disputed issue of material fact that would

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

[2] D'Orazio did not appeal the District Court's judgment on her bad faith claim.

preclude summary judgment on either her claim for medical benefits or her claim for wage loss.

A

As for D'Orazio's claim for medical benefits, there is no evidence that Hartford failed to pay any of her bills prior to its decision to discontinue payment after Dr. Bandera's independent medical examination. Indeed, when asked at her deposition to identify bills that had gone unpaid, D'Orazio responded that she was unaware of any.

D'Orazio argues that the District Court should have allowed her claim for future medical benefits to go to the jury. In support of this argument, she relies on: (1) counsel's argument that at trial D'Orazio would testify that she would benefit from aquatic therapy; and (2) the expert opinion of Dr. Frederick Reichle that D'Orazio would benefit from future physical therapy. Addressing the first point, the District Court properly held that counsel's representation did not constitute evidence of record. Regarding the second point, the District Court correctly noted that Dr. Reichle reached the opposite conclusion:

> Ms[.] D'Orazio's prognosis for recovery is guarded; [r]ecovery is quite unlikely because of the duration and persistence of her symptoms and the documented lack of response to appropriate therapies over an extended period. Ms. D'Orazio's injuries constitute a definite loss of bodily function which to a reasonable degree of medical certainty is permanent.

B

D'Orazio's wage loss claim fares no better than her claim for future medical

5

benefits. D'Orazio requested reimbursement for lost wages for approximately one month (between March 28 and April 25, 2008). Pursuant to its written policy, Hartford took no action on D'Orazio's claim until she provided written medical verification that she was unable to work.

The District Court correctly held that D'Orazio's failure to comply with a condition precedent to coverage doomed her claim for wage loss. D'Orazio suggests that Dr. Reichle's report substantiates her inability to work, but the report does not even mention the time period in question. D'Orazio also offers the opinion of a vocational expert, Dennis Mohn, who opined that the accident rendered her unemployable "in the national labor market" and that she should be entitled to proceed to trial on a claim for "lifetime wage loss of $2,449,482.00." This evidence is unhelpful to D'Orazio for two reasons. First, it does not establish that she was unable to work during the time period for which she claimed wage loss. Second, Hartford's policy states that wage loss benefits are available only for a two-year period following an accident, not for the rest of the insured's life.

III

For the reasons stated, we will affirm the District Court's judgment.

6