**SUPERIOR COURT
OF THE
STATE OF DELAWARE**

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted: June 7, 2023
Date Decided: July 7, 2023

Ryan P. Newell, Esquire
Emily V. Burton, Esquire
Tanner C. Jameson, Esquire
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
100 North King Street
Wilmington, Delaware 19801

Kaan Ekiner, Esquire
COZEN O'CONNOR, P.C.
1201 North Market Street, Suite 1001
Wilmington, Delaware 19801

Mitchell J. Edlund, Esquire
Corey T. Hickman, Esquire
COZEN O'CONNOR P.C.
123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606

RE: *Jencap Group, LLC et al. v. James E. Adams et al.*
<u>C.A. No. N22C-12-212 PRW CCLD</u>
Defendants' Motion to Dismiss

Dear Counsel:

The Court provides this Letter Opinion and Order in lieu of a more formal writing[1] to resolve the Adams Parties' Motion to Dismiss the Complaint (D.I. 6). For the reasons explained below, the Rule 12(b)(6) Motion is **GRANTED**.

## THE PARTIES

Plaintiff Jencap Group, LLC is a Delaware LLC with its principal place of

---

[1] The Court crafts this somewhat abbreviated decision keeping in mind the parties' full understanding of and familiarity with the factual background and operative agreements mentioned herein.

business in New York, New York.[2]  Jencap is the successor by merger to JenCap, Inc.[3] and is a "holding company for various managing general agencies and wholesale brokerage companies, including" Jencap Insurance Services, Inc. ("JCIS").[4]

Plaintiff JCIS is a Georgia corporation with its principal place of business in Atlanta, Georgia.[5]  JCIS is the successor by merger to MJ Kelly of Arkansas, Inc. ("MJ Kelly").[6]  JCIS is a managing general agency and wholesale brokerage company.[7]

James E. Adams is a former shareholder of MJ Kelly and MJ Kelly Company (the "MJ Entities") and is a citizen of Missouri.[8]  Jon S. Adams is a former shareholder of the MJ Entities and is a citizen of Arkansas.[9]  Paul D. Adams is a former shareholder of the MJ Entities and is a citizen of Missouri.[10]  The Paul D. Adams Revocable Trust (together with James E. Adams, Jon S. Adams, and

---

[2]   Compl. ¶ 8 (D.I. 1).

[3]   *Id*. at 1.

[4]   *Id*. ¶ 8.

[5]   *Id*. ¶ 9.

[6]   *Id*.

[7]   *Id*.

[8]   *Id*. ¶ 10.

[9]   *Id*. ¶ 11.

[10]   *Id*. ¶ 12.

Paul D. Adams, the "Adams Parties"), through the citizenship of its beneficiary and trustee, is a citizen of Missouri.[11]

### THE STOCK PURCHASE AGREEMENT

On September 15, 2016, Jencap and the Adams Parties entered into a Stock Purchase Agreement ("SPA") by which Jencap acquired the MJ Entities from the Adams Parties.[12]  The Adams Parties agreed to indemnify and hold Jencap and its affiliates harmless against certain claims and liabilities.[13]

Specifically, SPA Section 7.2 states:

> The Selling Stockholders (collectively, the "Seller Indemnifying Parties") shall jointly and severally indemnify the Buyer Parties and save and hold each of them harmless against and pay on behalf of or reimburse such Buyer Parties for any Losses which any such Buyer Party may suffer, sustain or become subject to, as a result of, in connection with, relating or incidental to or by virtue of . . . (iii) any Liability of the Seller Entities not reflected on the Estimated Closing Balance Sheet or included in Final Net Working Capital, . . . (v) any acts or omissions by the Seller Entities' employees, agents and contractors which arise out of the conduct of their professional activities as Producers that occurred prior to the Closing excluding, however, any claim or matter relating to (A) any Material Contract or

---

[11]  *Id.* ¶ 13.

[12]  *Id.* ¶¶ 17-18.

[13]  *Id.* ¶ 19

> Under the clear terms of the Agreement, the Adams Parties agreed to indemnify and hold Jencap and its affiliates, including MJ Kelly, harmless against all claims asserted against them for the acts or omissions of MJ Kelly's employees arising out of their conduct as insurance producers that occurred prior to the Closing Date, as well as for the liabilities maintained by the Adams Parties under the Agreement.

other agreement or commitment entered into in the Ordinary Course of Business, or (B) any Liability of any Seller Entity reflected on the Estimated Closing Balance Sheet or included in Final Net Working Capital."[14]

In addition, the SPA limits the period for bringing certain claims. As relevant here, SPA Section 7.1(c) provides in pertinent part:

"[t]he representations and warranties in this Agreement and the Schedules attached hereto . . . shall survive the Closing as follows: . . . (c) all . . . representations and warranties [not specified in (a) and (b)] shall terminate on the date that is twenty four (24) months after the Closing Date; provided that any representation, warranty or covenant in respect of which indemnity may be sought under Section 7.2, and the indemnity with respect thereto, shall survive the time at which it would otherwise terminate pursuant to this Section 7.1 if notice of actual breach thereof giving rise to such right or alleged right of indemnity shall have been given to the party against whom such indemnity may be sought prior to the time that such representation or warranty would otherwise terminate pursuant to this Section 7.1.[15]

### THE ADAMS PARTIES' PURPORTED BREACH OF THE SPA

On November 23, 2021, Jencap demanded the Adams Parties indemnify and hold Jencap and MJ Kelly harmless against all claims asserted against them with respect to the "Heritage Litigation."[16] That litigation concerned a "commercial

---

[14] Reply Br., Ex. 1 ("SPA") § 7.2(a) (D.I. 11).

[15] *Id.* § 7.1 (underlining in original).

[16] Compl. ¶ 30

By letter dated November 23, 2021, and pursuant to Article VII of the Agreement, Jencap first demanded that the Adams Parties, jointly and severally, indemnify and hold Jencap and its affiliate MJ Kelly harmless against all claims asserted against

property policy placed by MJ Kelly's employees and issued by Penn-Star Insurance Company ("Penn-Star") to Heritage . . . prior to the Closing Date, and makes allegations of misconduct relating to the MJ Kelly employees' cancellation of the Policy."[17]

The Adams Parties refused to indemnify and hold Jencap and its affiliates harmless, thus purportedly breaching the SPA.[18]

## PROCEDURAL BACKGROUND

Jencap filed its Complaint seeking one declaratory judgment and alleging two breaches: Count I asks for a declaration under the SPA that the Adams Parties are required to indemnify and hold harmless Jencap and its affiliates; Count II (Jencap against the Adams Parties) charges a breach of the SPA for failure to indemnify and hold harmless Jencap and its affiliates; and Count III (JCIS against just James E. Adams) alleges a breach of a General Agency Agreement ("GAA") for failure to

---

them by Heritage in connection with the placement of the Penn-Star Policy, including, without limitation, the claims asserted against each of them in the State Court Litigation and the Federal Court Litigation. Jencap also sought reimbursement of the attorneys' fees that Jencap and MJ Kelly have incurred in the Heritage Litigation.

On June 15, 2022, Jencap separately demanded the Adams Parties "indemnify and hold Jencap and MJ Kelly harmless from all damages arising out of the Penn-Star Claim, including reimbursement of Jencap's attorneys' fees." *Id.* ¶ 32.

[17] *Id.* ¶ 3.

[18] *Id.* ¶ 7.

indemnify and hold harmless Jencap and its affiliates.[19]

The Adams Parties moved to dismiss the Complaint under Superior Court Civil Rule 12(b)(6).[20]

The Court heard oral argument on the motion.[21] At argument, JCIS conceded that Count III failed to state a claim. So, the Court need only address Counts I and II here.

## THE PARTIES' CONTENTIONS

The Adams Parties say that Counts I and II should be dismissed because the claims are barred by a contract-defined limitations period for bringing them and because they, the Adams Parties, are not obligated to indemnify Jencap and its affiliates for the Heritage Litigation.[22]

Jencap says its claims are not time-barred because its indemnification claims challenge the SPA's covenants and agreements—not its representations and warranties—and thus its claims are not subject to the shortened limitations period.[23] Second, Jencap says the Heritage Litigation is not a liability reflected on the

---

[19] *Id.* ¶¶ 35-50.

[20] Mot. to Dismiss at 11 (D.I. 6).

[21] D.I. 18.

[22] Mot. to Dismiss at 12-18.

[23] Pls.' Answering Br. at 18-21 (D.I. 9).

Estimated Closing Balance Sheet or included in the Final Net Working Capital, and

is an act "that arose out of those employees' activities as insurance producers and

that occurred prior to Jencap's purchase of MJ Kelly,"[24] meaning the Adams Parties

have a duty to indemnify.

## STANDARD OF REVIEW

"Under Superior Court Civil Rule 12(b)(6), the legal issue to be decided is,

whether a plaintiff may recover under any reasonably conceivable set of

circumstances susceptible of proof under the complaint."[25] Under that Rule, the

Court will:

> (1) accept all well pleaded factual allegations as true, (2) accept even
> vague allegations as "well pleaded" if they give the opposing party
> notice of the claim, (3) draw all reasonable inferences in favor of the
> non-moving party, and (4) not dismiss the claims unless the plaintiff
> would not be entitled to recover under any reasonably conceivable set
> of circumstances.[26]

"If any reasonable conception can be formulated to allow Plaintiffs' recovery,

the motion must be denied."[27] Indeed, "[d]ismissal is warranted [only] where the

---

[24]  *Id.* at 1, 12-18.

[25]  *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (quoting Super. Ct. Civ. R. 12(b)(6)).

[26]  *Id.* (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

[27]  *Id.* (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

plaintiff has failed to plead facts supporting an element of the claim, or that under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[28]  In addition, a time-limitations defense may be decided at the Rule 12(b)(6) stage.[29]

## COUNTS I AND II ARE TIME-BARRED

Under SPA Section 7.1(c), Jencap had two years from the SPA's Closing Date (September 15, 2016) to provide notice of a claim for breach of a representation or warranty.[30]  Because Jencap waited until November 23, 2021, its claims are barred by the two-year contract-defined limitations period for bringing such.[31]

SPA Section 7.1(c) provides, in relevant part, that representations and warranties made in Article V (Representations and Warranties of the Seller Parties)

---

[28]  *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Ct. Aug. 20, 2004).

[29]  *Gadow v. Parker*, 865 A.2d 515, 519 (Del. 2005) ("The Superior Court Civil Rules expressly permit a defendant to raise the defense of limitations in a motion to dismiss or in a first responsive pleading to the complaint." (citations omitted)).

[30]  SPA § 7.1(c).

[31]  Compl. ¶ 30

> By letter dated November 23, 2021, and pursuant to Article VII of the Agreement, Jencap first demanded that the Adams Parties, jointly and severally, indemnify and hold Jencap and its affiliate MJ Kelly harmless against all claims asserted against them by Heritage in connection with the placement of the Penn-Star Policy, including, without limitation, the claims asserted against each of them in the State Court Litigation and the Federal Court Litigation. Jencap also sought reimbursement of the attorneys' fees that Jencap and MJ Kelly have incurred in the Heritage Litigation.

terminate two years after the Closing Date.[32]  Section 14 of Article V, and the corresponding Schedule 5.14, lists all open E&O claims, including the Heritage Litigation.[33]

SPA Section 7.2(a)(iii) says the Adams Parties need not indemnify Jencap for "any Liability of the Seller Entities not reflected on the Estimated Closing Balance Sheet or included in Final Net Working Capital."[34]  While the parties quibble over which document is the "Estimated Closing Balance Sheet" contemplated by the SPA, the Final Net Working Capital is given a precise definition in SPA Exhibit C (Revenue and Working Capital Methodology sheet).  Specifically:

> Net Working Capital shall include (i) a $25,000 liability for the Seller Entities' anticipated insurance deductible payment for pending E&O claims; the foregoing shall in no way limit the Seller Entities' liability for such claims, (ii) the accrued and unpaid amounts due for the Tail Policies for the Coverage Period, and (iii) the amount due Western Heritage.[35]

Jencap first protests that the $25,000 amount listed in the Revenue and Working Capital Methodology sheet "*does not* reflect the 'Liability' for the Heritage Litigation or any other claim, but rather only reflects a $25,000 total anticipated

---

[32]  SPA § 7.1(c).

[33]  SPA Schedule 5.14 No. 4 (Heritage Hospitality – PAV0070513 – Effective Date 10/6/2015).

[34]  SPA § 7.2(a)(iii).

[35]  SPA, Ex. C ("Revenue and Working Capital Methodology").  SPA § 2.2(c)(i) states that Final Net Working Capital is determined by Exhibit C.  SPA § 2.2(c)(i).

deductible payment for all E&O claims."[36]  And second, Jencap points out the Revenue and Working Capital Methodology sheet specifically notes that "the foregoing shall in no way limit the Seller Entities' liability for such claims," and "does not reflect or limit the 'Liability' in any way."[37]  Neither argument rescues Jencap's claims.

Jencap confuses "Liability" with total amount due.  But that's not how the SPA reads.  SPA Exhibit A defines Liability as:

> [A]ny liability, debt, obligation, commitment, deficiency, interest, Tax, penalty, fine, demand, judgment, cause of action or other loss (including incidental, consequential and punitive damages and Liabilities based upon multiple of profits and loss profits and interest, penalties, loss of benefit), cost or expense of any kind or nature whatsoever, whether asserted or unasserted, absolute, or contingent, known or unknown, accrued or unaccrued, liquidated or unliquidated, and whether due or to become due and regardless of when asserted.[38]

SPA Section 7.2(a)(iii) obligates the Adams Parties to indemnify "any Liability" "not . . . included in Final Net Working Capital."[39]  And Final Net Working Capital "include[s]" a sum for the Adams Parties' "anticipated insurance deductible payment for pending E&O claims."[40]  That is enough.  While far from the total liability, the

---

[36]  Answering Br. at 14 (emphasis in original).

[37]  *Id.* at 14-15.

[38]  SPA, Ex. A (definitions) at A-5.

[39]  SPA § 7.2(a)(iii).

[40]  SPA, Ex. C.

Heritage Litigation deductible is *included* in Final Net Working Capital and is thus a *Liability*.

But, says Jencap, because the Revenue and Working Capital Methodology sheet states "the foregoing shall in no way limit the Seller Entities' liability for such claims," the $25,000 amount listed "does not reflect or limit the 'Liability' in any way" or the Heritage Litigation.[41]

Jencap asks the Court to read the Revenue and Working Capital Methodology sheet statement that the $25,000 amount "in no way *limit[s]* . . . liability" to mean the Heritage Litigation is not "included in Final Net Working Capital."[42] But the fact that the "Net Working Capital shall include (i) a $25,000 liability for the Seller Entities' anticipated insurance deductible payment for pending E&O claims" and that this provision "shall in no way limit the Seller Entities' liability for such claims" does not mean that the Heritage Litigation is not included in the calculation.[43] At most, it means the Seller Entities' liability is not limited to the $25,000 deductible—

---

[41]  Answering Br. at 14-15.  SPA § 7.2(a)(iii) uses the term "included" in reference to the Final Net Working Capital and "reflected" is used in reference to the Estimated Closing Balance Sheet. SPA § 7.2(a)(iii).

[42]  *See* Answering Br. at 14-15.

[43]  SPA, Ex. C.

it does not operate to bar inclusion of the Heritage Litigation from the Final Net Working Capital.[44]

## CONCLUSION

While Jencap tries to frame this litigation otherwise—it says it brought "covenant-breach" claims—in reality, Jencap is challenging the SPA representations and warranties. Those challenges were limited to a bargained-for and defined two-year limitations period that expired in September 2018. Because Jencap waited until November 23, 2021, to make its demands,[45] those claims are time-barred.

Accordingly, the Adams Parties' Motion to Dismiss the Complaint under Rule 12(b)(6) is **GRANTED**.

**IT IS SO ORDERED.**

Paul R. Wallace, Judge

cc: All Counsel via File and Serve

---

[44] *In re Solera Ins. Coverage Appeals*, 240 A.3d 1121, 1131 (Del. 2020) ("Delaware courts will not 'destroy or twist' the words of a clear and unambiguous insurance contract." (citation omitted)); *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) ("Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty." (citation omitted)); *see Sycamore P'rs Mgmt., L.P. v. Endurance Am. Ins. Co.*, 2021 WL 4130631, at *19 (Del. Super. Ct. Sept. 10, 2021) (when addressing an undefined word or term in a contract, the Court accepts what it "most naturally means" in the given context).

[45] Compl. ¶ 30.