**FALCON STEEL COMPANY, Plaintiff,**

v.

**WEBER ENGINEERING COMPANY, INC., Defendant.**

**Civ. A. No. 8376.**

Court of Chancery of Delaware,
New Castle County.

Submitted: June 5, 1986.
Decided: Sept. 23, 1986.

William E. Manning, of Duane, Morris & Heckscher, Wilmington, and David Westermann, Jr., of Buckley, Treacy, Schaffel, Mackey, and Abbate, New York City, for plaintiff.

William H. Sudell, Jr., and Donald E. Reid, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Robert J. McPherson, of Postner & Rubin, New York City, for defendant.

## OPINION

JACOBS, Vice-Chancellor.

The plaintiff, Falcon Steel Company ("Falcon") is the prime contractor for steel fabrication and erection for the construction of a corporate office building for Becton Dickinson and Company ("Becton") in New Jersey. In 1984 Falcon subcontracted to the defendant Weber Engineering Company ("Weber") the steel erection portion of its contract with Becton. The Falcon/Weber subcontract called for Falcon to fabricate the steel in Delaware and to deliver it to Weber for erection at the construction site in New Jersey.

As a result of additional work that Weber was required to perform, Weber incurred alleged losses, damages and additional costs which form the basis of a claim by Weber against Falcon totalling $633,-180. On January 6, 1986 Weber filed a demand for arbitration of its claims with the American Arbitration Association pursuant to the arbitration clause of its subcontract with Falcon. Falcon refused to arbitrate and, in response, it brought this action to enjoin the arbitration. Weber answered and counterclaimed for an order requiring Falcon to comply with its contractual agreement to arbitrate Weber's claim. Simultaneously, Weber moved for judgment on the pleadings. This is the decision of the Court, following briefing and argument, on Weber's motion for judgment on the pleadings.[1]

### I.

Weber's motion is founded upon the language of the arbitration clause of its subcontract with Falcon ("the subcontract") which provides:

All claims, disputes or other matters in question arising out of or relating to this contract or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the United States Arbitration Act. Title IX of the United States Code. The award rendered by the arbitrator shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

Weber contends, and Falcon does not dispute, that its claims are covered by the broad language of the subcontract arbitration clause. No challenge is leveled against the validity of the arbitration clause itself. That being the case, Weber argues that Falcon is obligated to arbitrate Weber's claims as a matter of both Federal

---

1. Weber has submitted an affidavit in support of its motion, on the basis of which Weber argues that the motion may be treated as one for summary judgment under Chancery Court Rule 12(c). While Weber's contention is correct, it is unnecessary for this motion to be treated as one for summary judgment under Rule 56, because all of the facts material to the decision herein, including the contract documents attached thereto, are contained in, or made a part of, the pleadings.

and Delaware law, specifically, by virtue of Section 2 of the Federal Arbitration Act (9 U.S.C. § 2)[2] and Section 5701 of the Uniform Arbitration Act (10 Del.C. § 5701).

Section 2 of the Federal Act provides: A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. (9 U.S.C. § 2)

10 Del.C. § 5701 provides:

A written agreement to submit to arbitration any controversy existing at or arising after the effective date of the agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract, without regard to the justiciable character of the controversy, and confers jurisdiction on the Chancery Court of the State to enforce it and to enter judgment on an award. In determining any matter arising under this chapter, the Court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute. This chapter also applies to arbitration agreements between employers and employees or between their respective representatives, except as otherwise provided in § 5725 hereunder.

Given the clear statutory language and policy of the federal and state law, which is to encourage arbitration and the enforcement of agreements to arbitrate,[3] and given the breadth of the subcontract arbitration clause to which the parties agreed in this particular instance, it would appear manifest that Weber's claims are covered by the subcontract arbitration clause and that Falcon is obligated to arbitrate its dispute over those claims. See Pettinaro Construction Co., Inc. v. Harry C. Partridge, Jr. & Sons Inc., supra, 408 A.2d at 963 (enforcing comparable arbitration provision covering "all claims, disputes and other matters in question arising out of or relating to this contract").

Falcon argues, however, that there is more to the question of arbitrability than meets the eye, and that, properly interpreted, the Weber/Falcon subcontract arbitration clause does not apply to most of Weber's claims. Falcon contends that most of Weber's claims are not arbitrable, by virtue of the arbitration clause in the Falcon/Becton prime contract ("the prime contract) which (Falcon argues) is incorporated by reference into the subcontract. Falcon also argues that Weber's conduct constitutes a waiver of certain of its claims.

In support of its incorporation-by-reference contention, Falcon reasons, somewhat intricately, as follows: the parties incorporated the prime contract (including its arbitration clause) by reference into their subcontract, as evidenced by Subparts 22–24 of Paragraph 2 of the subcontract (See pp. 285–286, infra). Unlike the subcontract arbitration clause which is practically all-inclusive in its scope, the prime contract requires arbitration only for those claims amounting to $50,000 or less, and makes claims above that amount subject to litigation.

In further support of its incorporation by reference argument, Falcon relies upon the

---

**2.** Falcon and Weber agreed in their subcontract that the agreement to arbitrate is enforceable under the Federal Arbitration Act.

**3.** See also Pettinaro Construction Co., Inc. v. Harry C. Partridge, Jr. & Sons, Inc., Del.Ch., 408 A.2d 957 (1979); The City of Wilmington v. Fraternal Order of Police, Del.Supr., 510 A.2d 1028 (1986); Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984).

"conflicts" clause (¶ 17) of the subcontract, which provides that:

> In case of conflict between the provisions of the [prime contract].... and the provisions of this [subcontract]...., the provisions of this shall prevail in any matter between the contractor [Falcon] and the subcontractor [Weber].

Based upon the above-quoted language, Falcon argues that since the arbitration provisions of the prime contract and the subcontract are "inconsistent", the subcontract arbitration clause can only be applicable to "... matter[s] between the contractor and the subcontractor". Falcon argues that any other "matters", that is, any claims involving the subcontractor (Weber) and the owner (Becton), would be governed by the prime contract arbitration clause, under which all claims over $50,000 are not arbitrable. Applying that premise to Weber's claims, Falcon concludes that most of Weber's claims would not be arbitrable, because they exceed $50,000 and because they involve Becton in one or more respects.[4]

Having carefully considered Falcon's reasoning, I am satisfied that it cannot withstand analysis, because it is dependent upon two premises, neither of which is correct.

■ Falcon's first premise is that the arbitration clause of the Falcon/Becton prime contract is incorporated by reference into the Falcon/Weber subcontract. However, nowhere does the subcontract expressly so provide. Moreover, the subcontract provisions that Falcon cites as evidence that the parties intended to incorporate the prime contract by reference, do

not support its argument. Falcon relies upon Subparts 22, 23 and 24 of Paragraph 2 of the Subcontract (addendum). Subpart 22 provides:

> The contract documents consist of this agreement [Subcontract] and any exhibits attached hereto, the agreement between the Owner [Becton] and the contractor [Falcon], general conditions, supplementary, special and other conditions, the drawings, specifications ... all addenda issued prior to and all modifications issued after execution of the agreement between the Owner and Contractor and agreed upon by the parties.

Subpart 23 states:

> The Subcontractor [Weber] agrees to perform the work under the general direction of the Contractor and subject to the final approval of the Architect/Engineer or other specified representative of the Owner, in accordance with the contract documents.

And Subpart 24 provides:

> The Subcontractor [Weber] agrees to be bound to and assume toward the Contractor [Falcon] all of the obligations and responsibilities that the Contractor, by those documents [contract documents defined in subpart 22 of paragraph 2 of the Subcontract], assumes toward the Owner, contract documents are available, at reasonable times, at the office of the Contractor for examination by the Subcontractor.

Paragraph 2, upon which Falcon relies, is entitled "Scope of the Work", and generally covers details relating to the scope of the work and how and when it was to be per-

---

4. Falcon breaks down Weber's claims into four categories: (i) "Falcon Direct Claims", which are predicated upon steel fabrication errors by Falcon, (ii) "Becton Direct Claims", which are premised upon alleged defaults in performance by Becton and include claims allegedly arising from site or access conditions, (iii) "Becton-Falcon Direct Claims", which are premised upon alleged defaults in performance by Becton and Falcon and include instances where Weber alleges that the acts or omissions of Falcon and Becton combined to create a single field condi-

tion, and (iv) "Weber Impact Claims", which are claims that Weber's overall operations were made less efficient and more costly in each of the specific instances where Weber had submitted a claim in categories (i), (ii), or (iii). Falcon contends that the Becton Direct Claims, the Becton-Falcon Direct Claims, and that portion of the Weber Impact Claims attributable to such Direct Claims, are "matters" among Becton, Falcon, and Weber and, as such, are controlled by the Prime Contract arbitration clause.

formed. Subparagraphs 22–24 must be reasonably read in that context. The reasonable meaning of those Subparagraphs is that in performing the steel erection work, Weber agreed to follow the applicable requirements of the specifications, drawings, and other prime contract documents. Those subparagraphs cannot be reasonably read to effect a wholesale incorporation of the entire prime contract—indeed, they would make little sense if so construed. For example, the supposed "incorporation" would have to include those provisions of the prime contract calling for the erection of the steel. However, Weber had no role or responsibility for that function. Moreover, Falcon's proffered interpretation would require this Court to find that the parties, having explicitly agreed to the broad arbitration clause in their subcontract, also "implicitly" agreed in the same contractual document to be bound by the inconsistent provisions of the much narrower prime contract arbitration clause. While such a result is theoretically possible, it is hardly the way that two commercially sophisticated parties bargaining at arm's length normally conduct their affairs. To conclude that the parties intended such an anomalous result would require far more convincing evidence than Falcon has presented here. *See, AT & T Technologies, Inc. v. Communication Workers of America,* — U.S ——, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648.

■ Most significantly, the parties' supposed intent to incorporate the prime contract arbitration clause by reference is negated by the prime contract itself. Section 5.3.1 of Article V of the General Conditions (which are made a part of the prime contract) specifically provides that any subcontract

... shall allow to the Subcontractor, *unless specifically provided otherwise in the Contractor-Subcontractor Agreement,* the benefit of all rights, remedies and redress against the Contractor that the Contractor [Falcon], by these Documents has against the Owner [Becton]. (emphasis added)

Thus, the parties to the prime contract specifically agreed that a subcontractor could bargain and contract for remedies against Falcon different from those afforded by Becton (as owner) to Falcon (as contractor) in the prime contract. Consistent with Section 5.3.1, *supra,* Falcon and Weber did "specifically [provide] ... otherwise in the [subcontract] ... Agreement." [5]

■ Falcon's second premise is that the prime contract arbitration clause supersedes the subcontract arbitration clause with respect to any claim by Weber that involves any consideration of the owner's (Becton's) actions or inactions. That contention is also incorrect.

Falcon bases its position upon its interpretation of the "conflicts" provision of the subcontract. That clause pertinently provides that "in case of any conflict between

---

5. Nor do the authorities cited by Falcon support its position. In *Maxum Foundations, Inc. v. Salus Corporation,* 779 F.2d 974 (4th Cir.1985) the language of the prime contract contained specific evidence of an intent to incorporate the prime contract by reference, unlike the contract language here. In *Salus,* the prime contract specifications provided that the General Conditions, of which the arbitration clause was a part, "shall apply with equal force to ... all Subcontractors". No such provision is contained in the Falcon/Becton prime contract, and in *Salus,* the prime contract did not contain a provision comparable to Section 5.3.1 of the Prime Contract General Conditions here. Nor did the *Salus* subcontract contain an arbitration provision. Consequently, there was no basis in for conclud-

ing that the subcontracting parties in *Salus* intended for themselves a remedy different from the arbitration remedy provided for in the prime contract.

*Vespe Contracting Co. v. Anvan Corporation,* 399 F.Supp. 516 (E.D.Pa.1975) is inapposite for similar reasons. In that case the subcontract contained no arbitration clause, but did contain language that specifically incorporated by reference the "Subcontract Documents", among which were included the General Conditions of the prime contract. The General Conditions contained an arbitration clause but (unlike the prime contract here) did not explicitly authorize the contractor to provide in its subcontracts for a dispute resolution mechanism different from that contained in the prime contract.

the provisions of the [prime contract] and of [the subcontract] the [subcontract] provisions shall prevail in any matter between the Contractor and the Subcontractor." Falcon construes the conflicts clause as if it read that the subcontract provisions "shall prevail [*only* ] in any matter [*solely* ] between the contractor and the subcontractor." (bracketed language added) But that is not what the conflicts clause says, and Falcon offers no basis for its effort to rewrite it. Properly read and applied, the conflicts clause makes the arbitration provision of the subcontract applicable to all claims by Weber against Falcon. It does not create any exception for those claims which, for their resolution, requires consideration of the actions or inactions of the owner, Becton. *See, United States For the Use of Newton v. Neumann Caribbean International, Ltd.,* 750 F.2d 1422, 1424–25 (9th Cir.1985); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983) ("Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.")

Falcon's first argument—that the arbitration provision of the prime contract is controlling—is without factual or legal support.

Falcon's second argument is that Weber waived its right to submit its "impact" claims to arbitration, because Weber failed to give written notice of that claim within 5 days from the commencement of the damages being caused to it, as required by the subcontract. Falcon asserts that notice was not given until 19 months after Weber completed the project, and that Weber's failure may have severely prejudiced Falcon's ability to assert the impact claim against Becton under the prime contract. That is because the prime contract is said to require notice of a claim for an increase in the prime contract consideration within 20 days after the occurrence of the events giving rise to such claim, and that failure to give such required notice renders any such claim invalid.[6] Falcon also argues that Weber's delay resulted in the aggregation of the alleged "impact" damages to an amount that exceeds the $50,000 arbitrability limit in the prime contract.

In my view, Falcon's contention constitutes a defense that goes to the merits of Weber's impact claim, not to its arbitrability. Unless the parties otherwise agree, the question of arbitrability of a dispute is normally an issue for judicial determination. *AT & T Technologies, Inc. v. Communication Workers of America,* 106 S.Ct. at 1418–19. The merits of the claim itself and of any defenses thereto are for the arbitrator, not the court, to evaluate. 10 *Del.C.* § 5701; *Howard Electrical and Mechanical Company, Inc. v. Frank Briscoe Company, Inc.,* 754 F.2d 847, 850 (9th Cir.1985); *Bristol Farmers Market & Auction Company v. Arlen Realty & Development Corp.,* 589 F.2d 1214, 1217 (3d Cir.1978). Any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration, and once it is determined that a claim is arbitrable, the court may not delve any further into the dispute. *City of Meridian, Mississippi v. Algernon Blair, Inc.,* 721 F.2d 525, 528 (5th Cir. 1983).

In this case the subcontract contains no language or provision that makes giving the required notice of a claim a condition precedent to its arbitrability. That omission, together with the all-inclusive nature of the subcontract arbitration clause, compels the conclusion that the parties intended that the notice requirement would operate as a condition precedent to recovery upon a claim, not as a condition precedent to arbitrability. That inference is further compelled by the rule that any

---

6. There is no indication in the record that Falcon has attempted to assert the Weber claim against Becton or that Becton has taken the position that such claims are invalid for failure to satisfy the prime contract notice requirements.

doubts as to arbitrability must be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. at 24–25, 103 S.Ct. at 941.

■■■ Nor does Falcon's position improve because Falcon has chosen to label its contention as one of "waiver" or "estoppel". For a party to be found to have waived its right to arbitrate, it must have actively participated in a lawsuit or taken other action inconsistent with the right to arbitration. *N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722, 728 (8th Cir.1976); *Cornell & Company v. Barber & Ross Company*, 360 F.2d 512, 513 (1966). To the extent that "waiver" is used in the sense of laches or estoppel, it operates to bar arbitration only where the arbitration remedy would be inequitable, such as where relevant evidence has been lost due to delay. Waiver in the "laches" or "estoppel" sense is generally an issue for the arbitrator. *N & D Fashions, Inc.*, 548 F.2d at 728–29; *Trafalgar Shipping Co. v. International Milling Company*, 401 F.2d 568, 571 (2d Cir.1968). On this limited record, there is no basis for concluding that Weber has taken any action inconsistent with arbitration or that any evidence has been lost as a result of its alleged delay. Accordingly, Falcon's defense of waiver is one that must be determined in the arbitration.

\* \* \*

For the foregoing reasons, Weber's motion for judgment on the pleadings on its counterclaim is granted. The parties shall submit an appropriate form of order implementing the ruling set forth in this Opinion.