

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-28-2003

# CitiSteel USA Inc v. GE Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1197

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"CitiSteel USA Inc v. GE Co" (2003). *2003 Decisions.* Paper 182.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/182

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1197

CITISTEEL USA, INC.,

Appellant

v.

GENERAL ELECTRIC COMPANY,
including its GE Apparatus
Service Division and GE
Industry Sales and Service Division

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 99-cv-00810)
District Judge: Honorable Gregory M. Sleet

Argued on September 16, 2003

Before: ALITO, AMBRO and CHERTOFF, Circuit Judges

(Opinion filed: October 28, 2003)

OPINION

AMBRO, Circuit Judge

CitiSteel USA, Inc. ("CitiSteel") appeals the decision of the United States District

Court for the District of Delaware granting General Electric Company's ("GE") motion for judgment on the pleadings. CitiSteel filed a complaint against GE in the District Court in November 1999 alleging damages for breach of warranty and contract. GE moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In January 2001, the District Court issued a Memorandum and Order granting GE's Rule 12(c) motion and directed the clerk to mark the record "case closed."

CitiSteel appealed the District Court's ruling. In June 2002, we dismissed the appeal and remanded the case to the District Court because, as unresolved claims remained, the appeal was from a non-final order. In response, the parties negotiated a settlement of the remaining unresolved claims and filed a stipulation with the District Court. Pursuant to that stipulation, the District Court entered a final judgment in January 2003. CitiSteel thereafter filed a timely notice of appeal challenging the District Court's entry of partial judgment on the pleadings in favor of GE.

This Court has jurisdiction under 28 U.S.C. § 1291. For the reasons set forth below, we affirm the decision of the District Court.

## I. Factual Background

CitiSteel owns and operates a steel processing plant located in Delaware. To generate the power used in melting steel for this plant, CitiSteel makes use of several industrial-sized transformers. In 1997, it decided to overhaul and upgrade, among others, a 56 MVA power transformer in operation at its facility. After an exchange of correspondence with GE, CitiSteel prepared and forwarded a purchase order to GE dated

2

May 23, 1997 (the "Purchase Order").  GE completed the transformer overhaul work it

contracted to perform pursuant to the Purchase Order.

A short while after its overhaul, however, the transformer sustained significant

internal damage.   According to CitiSteel's complaint, this "resulted in a reduction of

CitiSteel's production capability, depletion of CitiSteel's steel supply, and inability of

CitiSteel to fulfill its contracts."  CitiSteel's complaint further alleges the transformer

failure was a direct and proximate result of GE's faulty workmanship.[1]

The dispute, however, centers on the terms of the Purchase Order.  The first page

of the Purchase Order, in addition to listing certain parts and pricing information, contains

the following language:

> Warranty offering:
> One year from installation with the understanding that CitiSteel will install
> the unit within 12 months of completion of repair.  Also included for
> general warranty information is GE ISS form 4887 (CS 1/89).

Form 4887 is the "GE Industry Sales & Services Conditions of Sale for Services" (the

"GE Conditions of Sale").[2]  Section 2 of the GE Conditions of Sale is entitled

"Warranty."  Subsection 2.a states GE warrants that all goods and services sold will be

free from "defects in material, workmanship and title," and if any defect is discovered

---

[1]     As we review the District Court's decision in the context of Rule 12(c), we must accept all well pled facts alleged by CitiSteel as true.  *See* discussion *infra* Part II.B.

[2]     Technically, the GE Conditions of Sale is form number 487, not 4887.  At oral argument, however, counsel for CitiSteel acknowledged that the Purchase Order's reference to form 4887 instead of 487 was a typographical error.  Despite the error, for the sake of convenience we continue the reference to form 4887.

within one year of the completion of the work performed, GE will "correct any such failure by reperforming any defective portion of the services furnished." This, per Subsection 2.b, is the "exclusive remedy for all claims based on failure of, or defect in, goods or services sold hereunder," whether such a claim is based on "contract, indemnity, warranty, tort (including negligence), strict liability or otherwise." In addition, Subsection 8.b ("Limitations of Liability") specifically disclaims liability for any "special, incidental, exemplary or consequential damages."

The reverse side of the CitiSteel Purchase Order, however, contains its own "General Terms and Conditions of Purchase" (the "CitiSteel General Terms"), which appear to contradict the GE Conditions of Sale. Specifically, Section II, Clause No. 17 of the CitiSteel General Terms states that all remedies "shall be cumulative and in addition to any other remedies provided by law or equity," and Section II, Clause No. 24 states that GE will indemnify CitiSteel for "any and all liability, loss, damages or expense" resulting from "any failure of [GE] to comply with the provisions hereof."

## II. Discussion

CitiSteel appeals the District Court's judgment in favor of GE on two separate grounds. First, CitiSteel argues the District Court erred by failing to convert GE's Rule 12(c) motion for judgment on the pleadings to a Rule 56 motion for summary judgment. Second, CitiSteel argues the District Court erred by concluding the GE Conditions of Sale were incorporated into the Purchase Order, thus precluding the recovery of monetary damages as a matter of law. We exercise plenary review over these legal conclusions.

4

See, e.g., Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988).

## A. Rule 12(c)

Rule 12(c) states:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

FED R. CIV. PROC. R. 12(c). To its Rule 12(c) motion, GE attached a letter from GE to CitiSteel (which, among other things, alludes to the GE Conditions of Sale), the Purchase Order itself and the GE Conditions of Sale. In its response, CitiSteel attached the affidavit of an employee and the CitiSteel General Terms.

Merely attaching documents to a Rule 12(c) motion, however, does not convert it to a motion under Rule 56. In ruling on a motion to dismiss, a trial court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." PBGC v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).[3] Further, in ruling on the motion a court generally has "discretion to address evidence outside the complaint . . . ." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002).

Applied to this case, we conclude the District Court did not err by continuing to

---

[3] While White Consol. Indus. involved a motion to dismiss for failure to state a claim under Rule 12(b)(6), we have long recognized the overlap of standards between a Rule 12(b)(6) motion to dismiss and a Rule 12(c) motion. See Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n.4 (3d Cir. 1986).

consider GE's motion as under Rule 12(c). Neither side has questioned the authenticity of any document attached to GE's motion or CitiSteel's response. Indeed, most of those documents are critical to CitiSteel's claim for damages.[4] Conversely, the District Court appears to rely on the GE letter to CitiSteel solely for the proposition that CitiSteel had a copy of the GE Conditions of Sale prior to issuing the Purchase Order — a fact not disputed by CitiSteel and otherwise inferable from the reference to the GE Conditions of Sale on the face of the Purchase Order. Finally, the affidavit tendered by CitiSteel is a legally irrelevant statement of its previously unexpressed, subjective intent which the District Court was not required to consider or to give weight.

## B. The Purchase Order

As the District Court's ruling was in the context of Rule 12(c), we must decide if its standards have been satisfied. Under Rule 12(c), a court must "view the facts in the pleadings in the light most favorable to the plaintiff and must grant the motion only if the moving party establishes that no material issue of fact remains and that it is entitled to judgment as a matter of law." Shelly, 798 F.2d at 97 n.4.

Basic contract interpretation standards are well established. Determining whether

---

[4]  We also find unpersuasive CitiSteel's argument that the District Court's decision — stating CitiSteel should be barred "from recovering consequential damages" — indicates it improperly considered evidence outside the pleadings because the CitiSteel complaint never uses the term "consequential damages." As stated previously, CitiSteel's complaint seeks damages due, in part, to a reduction of production capacity, depletion of steel supply and inability to fulfill contracts, all of which flow consequentially from the contractual violation CitiSteel alleges.

a contract provision is ambiguous is a question of law. <u>Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.</u>, 198 F.3d 415, 421 (3d Cir. 1999). Absent ambiguity, a court enforces a contract as written absent ambiguity. <u>Id</u>. A contract is not ambiguous unless "the provisions in controversy are reasonably or fairly susceptible of different interpretations." <u>Kaiser Aluminum Corp. v. Matheson</u>, 681 A.2d 392, 395 (Del. 1996) (internal citations omitted);[5] <u>see</u> <u>also</u> <u>Emerson Radio Corp. v. Orion Sales, Inc.</u>, 253 F.3d 159, 163-64 (3d Cir. 2002). The test is not the parties' subjective intent, but rather "what a reasonable person in the position of the parties would have thought" the contract provision meant. <u>Kaiser Aluminum Corp.</u>, 681 A.2d at 395 (internal citations and quotations omitted); <u>see</u> <u>also</u> <u>Emerson Radio Corp.</u>, 253 F.3d at 164 (stating that a court must "determine if there [are] objective indicia that . . . the terms of the contract are susceptible of different meanings") (internal citations and quotations omitted).[6]

As the dispute in this case centers on whether the GE Conditions of Sale were incorporated into the Purchase Order, we must also examine the specific standards for incorporation by reference. These standards are also well established. A contract may

---

[5] The parties agree that Delaware law applies regardless which contractual terms apply.

[6] It is for this reason that CitiSteel's reliance on its own subjective intent is misplaced. Although not an exhaustive list, objective indicia of intent could include past dealings between CitiSteel and GE, general custom in the industry or representations made by GE to CitiSteel regarding the warranty. CitiSteel has failed to allege the existence of, or allude to, any objective evidence, nor has it alleged any legal defense, such as fraud or mistake, which warrants looking beyond the Purchase Order.

incorporate provisions contained in another instrument so long as the incorporated provisions are "specifically set forth or identified." State v. Black, 83 A.2d 678, 681 (Del. Super. 1951), *as cited in* Star States Develop. Comp. v. CLK, Inc., No. 93L-08-048, 1994 Del. Super. LEXIS at *10 (Del. Super. 1994). We recently reiterated this tenet of hornbook law in Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 447 (3d Cir. 2003). Moreover, in the context of incorporation by reference, it "is appropriate to require a merchant to exercise a level of diligence that might not be appropriate to expect of a non-merchant" because the "goal of commercial contract law is to efficiently facilitate business transactions between seasoned merchants." Id. at 447 n.10.

In accordance with these standards, we find that the Purchase Order unambiguously incorporated the GE Conditions of Sale. This is the only reasonable interpretation of the language used in CitiSteel's Purchase Order — "included for general warranty information is [the GE Conditions of Sale]." See Citadel Holding Corp. v. Roven, 603 A.2d 818, 822 (Del. 1992) (stating courts typically determine the parties' intent "from the language of the contract" and give those terms their ordinary meaning).[7] CitiSteel falls far short from asserting successfully that the language of the Purchase Order should not be given its plain meaning. See Hercules, Inc. v. AIU Ins. Co., 784

---

[7] The cases CitiSteel cites to attack the specificity of the language of incorporation in the Purchase Order are distinguishable. They generally stand for the proposition that a specific reference to another document for the purpose of defining the applicable standards of performance, or to define the scope of work involved, does not incorporate other, more general terms. See, e.g., Falcon Steel Co. v. Weber Engineering Co., Inc., 517 A.2d 281 (Del. Ch. 1986). Such is not the case here.

A.2d 481, 490 n.24 (Del. 2001) (stating a party cannot create ambiguity where none exists). Accordingly, we reject as unpersuasive the arguments advanced by CitiSteel in support of its position that the Purchase Order is ambiguous.[8] We also note that CitiSteel (not GE) prepared the Purchase Order. Therefore, even assuming the Purchase Order's language is ambiguous, that language is construed against CitiSteel as the drafter. Graham v. State Farm Mut. Auto. Ins. Co., 565 A.2d 908, 912 (Del. 1989).

Finally, CitiSteel argues the CitiSteel General Terms prevented incorporation of the GE Conditions of Sale and expressly reserved the rights and remedies supposedly disclaimed by the GE Conditions of Sale. These arguments are also unpersuasive. Courts must strive to give effect to all provisions of a contract and not render any provision meaningless. Elliott Assocs., L.P. v. Avatex Corp., 715 A.2d 843, 854 (Del. 1998). If CitiSteel's argument were to be accepted, then the language "included for general warranty information" on the Purchase Order is meaningless. In addition, when the terms of a contract cannot be reconciled, the more specific terms control over the general and

---

[8]    In arguing the Purchase Order's ambiguity, CitiSteel misconstrues and mis-cites several cases. In Emerson Radio Corp., the district court granted summary judgment despite finding that the contract term at issue was ambiguous. 253 F.3d at 164. As such, we held the district court improperly prevented the jury from resolving this ambiguity through extrinsic evidence. Id. We did not conclude, however, that a district court must analyze extrinsic evidence in determining whether a contract is ambiguous. Further, the issue in J.A. Jones Constr. Co. v. City of Dover, 372 A.2d 540 (Del. Super. 1977), was whether a contract provision disclaiming liability applied to a particular fact situation. Denying summary judgment, the Court noted that a contract must disclaim liability with a sufficient degree of clarity. Id. at 553. CitiSteel, however, has never argued that the GE Conditions of Sale (if applicable) failed to disclaim liability clearly.

9

typewritten terms prevail over printed or standardized language.  <u>Stasch v. Underwater Works, Inc.</u>, 158 A.2d 809, 812 (Del. Super. 1960); <u>see</u> <u>also</u>  <u>Goldstein v. Blumenfield</u>, 574 A.2d 109, 110 (Pa. Super. 1990); 11 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 32.13 (4th ed. 1999).  While both the GE Conditions of Sale and the CitiSteel General Terms are standardized, the specific language of incorporation in the Purchase Order is typewritten.  This indicates the terms referenced by the language of incorporation control.

* * * * *

For these reasons, we affirm the District Court's judgment in favor of GE.

_____

TO THE CLERK:

Please file the foregoing Opinion.

By the Court,

/s/ Thomas L. Ambro, Circuit Judge

10