United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 12, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 03-20370

HARRY HABETS, an individual

Plaintiff-Appellant,

versus

WASTE MANAGEMENT, INC., a Delaware Corporation

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

Before EMILIO M. GARZA, DeMOSS, and CLEMENT, Circuit Judges.

DeMOSS, Circuit Judge:

Plaintiff-Appellant Harry Habets ("Habets") seeks reversal of the district court's decision adopting the magistrate judge's recommendation and granting summary judgment to Defendant-Appellee Waste Management, Inc. ("WMI"). The district court concluded that Habets had no right to participate in WMI's Key Executive Severance Plan (the "KESP") once WMI's Board of Directors (the "Board") amended the list of KESP participants to remove Habets. On appeal, Habets argues first that the district court failed to review the magistrate judge's recommendation under a *de novo* standard, and second that the district court improperly granted summary judgment

to WMI because the plain language did not favor WMI's interpretation of the KESP; if the KESP's terms were ambiguous, the extrinsic evidence did not favor WMI's interpretation; and a material issue of fact existed as to whether WMI removed Habets from the position of executive officer. Because we find that the district court conducted a proper *de novo* review of the magistrate's recommendation, the KESP's terms unambiguously granted the Board the discretion to specify who was and was not a participant in the KESP, and Habets was so removed as a participant in May 1992, we AFFIRM the decision of the district court.

### BACKGROUND

WMI hired Habets in September 1985 as a general manager for its Chicago office. On January 10, 1990, Habets was appointed as President – Medical Services and Vice President of WMI. At that point, Habets became eligible to participate in a "golden parachute" benefits plan, the KESP. The KESP was created in 1986 and provided that if a participant of the KESP was terminated, which definition included voluntarily resigning, from employment within three years of a change in control of company management, the participant would receive a generous severance compensation package. In March 1990, the Executive Compensation Committee of the Board formally named Habets as a participant in the KESP; his name was added to a company document entitled "Exhibit 1," which listed all participants. Habets's status as a regional officer of

2

WMI was reflected in WMI's 1990 annual report, dated February 7, 1991. Habets also became eligible to participate in the Supplemental Executive Retirement Plan (the "SERP").

The KESP, which provided that Delaware law govern its interpretation, included the following key provisions:

1.1.4. *Participant*: The term "Participant" shall mean the officers of the Company or its subsidiaries who are listed on Exhibit 1 hereto and such additional officers of the Company or its subsidiaries as the Board of Directors of the Company may, by resolution duly adopted prior to any Change in Control, from time to time specify as being a Participant in this Plan.

2.2. *Amendments, Etc.*: Prior to the expiration of the Plan Period, the Company shall not amend, terminate or suspend the Plan or any provision hereof, including without limitation this Section 2.2, without the prior written consent of any Participant adversely affected thereby. . . .

2.3. *Certain Limitations*: Without limiting any rights which any Participant may have under any Other Plan, nothing in this Plan shall grant any Participant any right to remain an executive officer, director or employee of the Company and/or any of its subsidiaries, whether or not a Change in Control shall occur.

In late 1991 WMI underwent a corporate restructuring, which removed Habets as a regional top officer, after his region was combined with another. This restructuring also removed Douglas Allman ("Allman"), another WMI employee, as an executive officer. WMI's 1991 annual report omitted Habets from its list of officers. Habets kept his job title but reported to a regional officer, rather than to the president of the company, as he had formerly done. On May 29, 1992, the Executive Compensation Committee of the

3

Board approved a new list of persons eligible to participate in the KESP; Habets's and Allman's names were removed from Exhibit 1. Allman received notice of his removal from the list; Habets did not.

In August 1992 WMI attempted to terminate the KESP for all participants, except those working overseas. In this process, WMI's executives sought counsel from Herbert Getz ("Getz") who then served as a Vice President, Secretary, and Assistant General Counsel. Getz advised offering stock options to the KESP participants in exchange for their waiving their rights under the KESP. WMI followed Getz's recommendation. Habets received stock options but was not among those persons from whom WMI requested a waiver. In contrast, Allman did waive any rights he had under the KESP for stock options.

In July 1998 WMI merged with a subsidiary of USA Waste. As part of the merger, the SERP was terminated and WMI agreed to pay a lump sum to employees with SERP benefits. Habets was eligible for this SERP payment but disputed WMI's calculation of the amount he was due under the SERP. Habets sent a memo to WMI on December 1, 1998, advising it of the SERP calculation errors based on his years of membership in the KESP. WMI responded that the KESP was terminated and could not be used in conjunction with calculating SERP benefits. Habets did not accept this and continued to correspond with WMI about his KESP and SERP rights. On December 22, 1998, WMI sent Habets a letter offering to increase

4

Habets's SERP payment by two additional years of service credit if he would release any claims under the KESP. In early 1999 WMI sent Habets two checks totaling $348,189.34, which reflected its calculated SERP distribution of $281,555,89 and the supplemental compromise amount of $66,234.39. Habets cashed the checks but refused to sign a waiver of his KESP rights.

On July 27, 1999, Habets resigned from WMI. At that time, Habets requested severance pay due him under the KESP and the SERP. On December 8, 1999, Habets's attorney sent WMI a demand letter requesting it pay Habets his KESP benefits. WMI responded on February 29, 2000, stating that WMI's lump sum SERP payment to Habets in 1999 constituted a satisfaction of WMI's obligations as to both the KESP and the SERP, and Habets had waived his KESP rights in connection with the receipt of the August 1992 stock options. On October 30, 2000, WMI reiterated these assertions by letter to Habets.

Habets filed the instant suit in July 2001, alleging that WMI breached the KESP and the SERP by not fully compensating him pursuant to these plans after he resigned. WMI denied that it owed Habets any benefits under either plan. On July 1, 2002, WMI moved for summary judgment. The district court referred the matter to a magistrate judge, who on February 12, 2003, recommended granting WMI's motion for summary judgment. On March 3, 2003, Habets filed objections to the magistrate's recommendation. On March 4, 2003, the district court adopted the magistrate's recommendation in its

5

entirety. Final judgment was entered the next day, and Habets timely appealed only the determination of his rights under the KESP.

## DISCUSSION

### Whether the district court conducted a proper *de novo* review of the magistrate judge's recommendation.

Section 636(b)(1) of Title 28 and Federal Rule of Civil Procedure 72(b) provide that within ten days after a magistrate judge issues her recommendation, a party may file specific written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The district court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" before accepting, rejecting, or modifying those findings or recommendations. 28 U.S.C. § 636(b)(1).

Habets contends that the district court here did not undertake the requisite *de novo* review of the magistrate's recommendation. Habets asserts that because the district court entered its two-sentence order adopting the magistrate's recommendation without any opinion or analysis only one day after it received Habets's objections which included a 200-page appendix and because the issues presented to the magistrate were complex, the district court must have merely "rubber stamped" the magistrate's recommendation.

WMI responds that the district court followed proper procedure in assigning the motion for summary judgment to the magistrate

6

judge and in permitting Habets to file objections to the magistrate's recommendation before entering summary judgment in favor of WMI. WMI claims that given the simplicity of the issues before the district court, the district judge had ample time to conduct a *de novo* review of the magistrate's recommendation before adopting it.

With respect to the district court's expeditiousness, we have expressly ruled against Habets's position in **McGill v. Goff**, 17 F.3d 729, 732 (5th Cir. 1994), *overruled on other grounds*, **Kansas Reins. Co., Ltd. v. Congressional Mortgage Corp. of Texas**, 20 F.3d 1362, 1373-74 (5th Cir. 1994). In **McGill**, this Court considered whether a district court committed reversible error when it adopted a magistrate's recommendation just one day after receiving the recommendation, and before the defendants had an opportunity to file any objections. **Id.** at 731. We found any error harmless because adoption of the recommendation after one day did not imply a lack of review, and the district court could have conducted a meaningful review without any objections. **Id.** at 731-32. **McGill** permits a district court to adopt a magistrate's recommendation after one day before receiving any objections in the ten-day period; thus, **McGill** also refutes any claim that a district court must wait any certain time period after receiving objections to adopt a recommendation.

With respect to Habets's claim that the district court's order

was too abbreviated, Habets fails to cite any pertinent case law that requires a district court to provide analysis when it adopts a magistrate's recommendation for summary judgment. The cases cited by Habets are distinguishable. Here, unlike in *Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983), the record was available to the district court a full 20 days before the court issued its order. Unlike in *Stauble v. Warrob, Inc.*, 977 F.2d 690, 696 (1st Cir. 1992), and *Vekamaf Holland B.V. v. Pipe Benders, Inc.,* 671 F.2d 1185, 1186 (8th Cir. 1982), the magistrate here made no involved findings of fact because this was a recommendation on a motion for summary judgment. Unlike in *Saunders v. Naval Air Rework Facility*, 608 F.2d 1308, 1311 (9th Cir. 1979), the magistrate here provided a thorough analysis to support its recommendation, and the district court had a complete record of the magistrate's proceedings. Finally, unlike in *English v. Local Union No. 46*, 654 F.2d 473, 474-78 (7th Cir. 1981), the language of the district court's order here did not imply that it did not properly review the magistrate's recommendation.

In light of *McGill*, which allows for the expeditiousness of the district court's order, and because the magistrate here made only legal findings on a summary judgment motion, the district court was permitted to issue an abbreviated order adopting the magistrate's summary judgment recommendation one day after receiving Habets's objections. We thus find the district court

8

conducted a proper *de novo* review of the magistrate's recommendation.

**Whether the district court erred in granting summary judgment to WMI.**

This Court reviews a district court's grant of summary judgment *de novo*. *Fiesel v. Cherry*, 294 F.3d 664, 667 (5th Cir. 2002) (citation omitted). Under Federal Rule of Civil Procedure 56(c), "[s]ummary judgment is proper when, viewing the evidence in the light most favorable to the nonmovant, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (internal quotations and citation omitted); *see also* *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Likewise, we review matters of contract interpretation *de novo*. *HS Res., Inc. v. Wingate*, 327 F.3d 432, 440 (5th Cir. 2003).

Under Delaware law, the principles governing contract interpretation are well settled. *Northwestern Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996). The plain contract language must be construed as a whole, to give effect to the intentions of the parties. *Id.* (citation omitted). "Where the contract language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning." *Id.* (citing *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)). A contract is ambiguous

only when the provisions in controversy are fairly susceptible of having different interpretations. *Rhone-Poulenc*, 616 A.2d at 1196. However, a contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. *Id.* Courts can only consider extrinsic evidence to interpret the agreement if there is an ambiguity in the contract. *Esmark*, 672 A.2d at 43 (citing *Pellaton v. Bank of New York*, 592 A.2d 473, 478 (Del. 1991)).

Habets argues here that the plain language of the KESP necessitates that his KESP benefits remained effective. Habets maintains that the plain language of Section 1.1.4 means a participant in the KESP is either an officer listed in Exhibit 1, which is incorporated by reference into the KESP, *State ex rel. Hirst v. Black*, 83 A.2d 678, 681 (Del. Super. 1951) ("It is . . . axiomatic that a contract may incorporate by reference provisions contained in some other instrument."), or an officer that the Board adds. Habets claims the provision does not suggest that the Board may remove or terminate a KESP member.

WMI responds first that Section 1.1.4 unambiguously permitted the Board to add and remove additional officers as KESP participants, as the magistrate and the district court found. WMI also asserts that the KESP does not incorporate Exhibit 1. WMI relies on *Star States Development Co. v. CLK, Inc.*, No. 93L-08-048, 1994 WL 233954 (Del. Super. 1994), for the proposition that

10

contracts must do more than merely mention a document to incorporate that document. However, this reading is not entirely correct. What **Star States** held was if a contract fails to specify a document and its terms, but that document is an integral part of a document that the contract does specify, the unspecified document could be incorporated into the contract if that reading best serves the parties' intentions and is reasonable. 1994 WL 233954, at *5.

As the magistrate and the district court found, although Section 1.1.4 used the word "additional" to describe the officers added to the KESP's benefits apart from Exhibit 1, which Habets was not a part of before March 1990 or after May 1992, the clear meaning and intent of Section 1.1.4 is that the Board was permitted to "specify" from time to time those persons who were "key executives" entitled to severance benefits upon a change in control of WMI. Section 1.1.4 thus did not confer on any corporate officer any vested right to continued participation in the KESP, nor did it limit the Board's exclusive power to "specify" participants.

Even if Exhibit 1 were incorporated into the KESP, we would follow the common sense approach under Delaware law. *See* **Falcon Steel Co. v. Weber Eng'g Co., Inc.**, 517 A.2d 281, 286 (Del. Ch. 1986). That is, we refuse to incorporate by reference terms which make a reasonable reading of the contract nonsensical and do not support the parties' reasonable intent. **Star States**, 1994 WL 233954, at *4 (citing **Falcon Steel**, 517 A.2d at 286). Thus, we

11

cannot incorporate the term – Habets's name – that was admittedly included on a previous version of Exhibit 1 not only because such term is no longer a part of Exhibit 1, but also because this reading would not support the Board's power to "specify" from time to time those KESP executives eligible to be participants at the time of a change in control.

Habets next contends that Section 2.2 of the KESP prohibited WMI from terminating a participant's KESP rights without his prior written consent. In other words, because the KESP incorporated Exhibit 1, any removal of a name from Exhibit 1 without the participant's consent violates Section 2.2 because it would unilaterally terminate a participant's KESP benefits.

WMI reads Section 2.2 as simply prohibiting the Board from amending, terminating, or suspending the KESP itself generally without the consent of eligible participants adversely affected. WMI argues this is why the Board did not obtain Habets's consent in May 1992 when it terminated his KESP membership by removing him from Exhibit 1; that termination did not constitute a change to the KESP plan generally but was an expression of the Board's power to specify participants in the KESP. In contrast, when WMI was in the process of terminating the KESP entirely in August 1992, WMI sought the consent of all eligible KESP participants pursuant to Section 2.2.

To accept Habets's interpretation on this point would require that this Court find the names of the participants themselves were

12

intended to be "plan provisions": the amendment of which would then trigger Section 2.2 and require the consent of those participants adversely affected. This interpretation conflicts with the plain meaning of Section 1.1.4, which defines participants with reference to Exhibit 1 or a separate resolution of the Board, and not with reference to any additional definition within the KESP that would require compliance with Section 2.2 if amended. The magistrate and the district court were thus correct in finding that the KESP plainly intended that the Board retain the power to specify KESP participants and did not contemplate allowing an individual participant like Habets to essentially veto a Board resolution removing him as a participant.

Finally, Habets argues the magistrate and the district court misinterpreted Section 2.3. Habets contends Section 2.3 did not bolster WMI's right to unilaterally terminate a participant's KESP rights but simply provided that the KESP standing alone does not guarantee a participant continued officer status or even continued employment with WMI. Habets claims what Section 2.3 intended is merely that the KESP is not considered an employment agreement.

WMI asserts that an ordinary reading of Section 2.3 clearly conflicts with Habets's interpretation of Section 2.2. WMI reads Section 2.3 to plainly permit the Board to remove an employee from an officer position, which reading Habets does not dispute. WMI also implicitly reads Section 2.3 as thus permitting the Board to identify and control which employees are KESP participants. To

13

preserve the plain meaning of Section 2.3 and Section 1.1.4, WMI argues Section 2.2 must be construed as allowing the Board to terminate individual KESP membership without that individual's consent.

The magistrate and the district court agreed with WMI and found that participation in the KESP did not guarantee continued status as an WMI employee in any capacity under Section 2.3, much less "key executive" status. Overall, the magistrate and the district court found no ambiguity in any of the KESP's provisions and that the Board had the discretion to and properly did so remove Habets as a KESP officer participant in May 1992 at the Executive Compensation Committee meeting prior to any change in control. Thus, Section 1.1.4 defined a participant as a WMI employee who is so designated by the Board as eligible for KESP benefits at the time a change in control occurs; Section 2.2 only required the individual consent of adversely affected participants when the KESP generally was to be amended or terminated, not when an individual participant was being removed by the Board; and Section 2.3 demonstrated the Board's ability to remove officers.

To give effect to each and all of these plain provisions of the KESP, see *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1184 (Del. 1992), a participant's rights under the KESP must be construed as vesting only when a change in control occurs, such that the Board is duly authorized to change a WMI

14

employee's KESP participation status anytime before a change in control. Here, the summary judgment evidence clearly indicated that Habets was named a KESP participant by the Executive Compensation Committee of the Board in March 1990, but the Executive Compensation Committee plainly removed Habets from participating in the KESP as of May 1992, which was long before the change in control that occurred in July 1998. Therefore, we find that the district court properly granted summary judgment to WMI.

Because we determine the provisions of the KESP unambiguously gave the Board the right to remove Habets as a officer participant in the KESP and that the summary judgment evidence showed that the Board had done so, we do not address Habets's extrinsic evidence arguments. Habets also filed three motions on appeal, which were carried with the case. As to Habets's motion for award of attorney's fees and Habets's motion to hold appellant's motion for attorney's fees in abeyance pending the final determination in this case, we DENY these motions because we find the district court's decision in favor of WMI was proper. As to Habets's motion to supplement the record on appeal, we also DENY this motion because such additional materials are not necessary or appropriate for our decision in this case.

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing, and for the reasons set forth above,

15

we conclude that the district court properly conducted a *de novo* review of the magistrate's recommendation and properly adopted that recommendation to grant summary judgment to WMI.  Therefore, we AFFIRM the decision of the district court below.

**AFFIRMED.**

Clement, Circuit Judge, Dissenting:

Summary judgment is problematic for three reasons.  First, a genuine issue of material fact exists as to whether WMI removed Habets as an officer.   Second, the KESP unambiguously supports Habets's position.  Third, the extrinsic evidence compels Habets's interpretation of the KESP.

## A.  Genuine Issue of Material Fact

A glaring issue of material fact exists as to whether WMI removed Habets as an officer. According to WMI's interpretation of the KESP, WMI was authorized to unilaterally terminate Habets's KESP rights because WMI removed Habets as an officer prior to terminating the KESP in its entirety.  That removal, WMI alleges, occurred during the regional consolidation.  Thus, even accepting WMI's interpretation of the KESP, WMI may only succeed on summary judgment if the evidence establishes the factual conclusion that WMI removed Habets as an officer during the regional consolidation.

The evidence makes clear that this material fact is not established.  Undisputed evidence exists that Habets's title, employment responsibilities, and compensation remained the same after the regional consolidation.  Furthermore, WMI fails to produce any evidence that Habets was removed in accordance with WMI's bylaws.  The record contains no documentation of any Board resolution to remove him; no minutes of a Board meeting where the alleged removal was discussed; no Board vote on the alleged removal; and no documentation that Habets received notice of the alleged removal.  The only evidence that WMI relies on to establish this material fact is an annual report that does not list Habets as an officer.  This evidence alone is insufficient to conclusively establish on summary judgment that the Board did in fact remove Habets as an officer in conformity with bylaw

17

procedures.

## B. Plain meaning of the KESP

The KESP does not unambiguously provide WMI the ability to terminate Habets's KESP rights without his consent. Section 1.1.4 defines "Participant" to include "officers of the Company . . . who are listed on Exhibit 1 . . . ." Section 2.2 states that "the Company shall not amend, terminate or suspend the Plan or any provision thereof . . . without the prior written consent of any Participant adversely affected thereby." These sections imply that if the KESP incorporates Exhibit 1 as a provision of the KESP, then Section 2.2 prohibits WMI from removing a Participant by amending Exhibit 1 without that Participant's consent.

Delaware caselaw compels the conclusion that Exhibit 1 is a KESP provision. "Where a contract is executed which refers to another instrument and makes the conditions of such other instrument a part of it, the two will be interpreted together as the agreement of the parties." *State ex rel. Hirst v. Black*, 83 A.2d 678, 681 (Del. Super. 1951). Here, the KESP expressly refers to Exhibit 1, and makes it a condition of participation in the KESP. As an incorporated instrument, Exhibit 1 is a provision of the KESP. Exhibit 1 is thus subject to Section 2.2's statement that before the Board can amend "any provision" of the KESP, the Board must obtain "written consent of any Participant adversely affected . . . ." Thus, any Participant adversely affected by an amendment to Exhibit 1 must provide written consent before that amendment is adopted.

The majority opinion suggests an alternative interpretation of the KESP that results in the rights vesting when a change in control occurs. This interpretation fails for two reasons. First, at oral

18

argument, WMI specifically confirmed that a Participant's rights vest upon being listed on Exhibit 1.[1]

Second, Section 1.1.4 provides that an employee must be made a Participant "prior to any Change in Control." Participant status, *i.e.*, having rights under the KESP, must therefore occur before a change in control. Thus, KESP rights vest *before* a change in control; they vest when the employee is listed on Exhibit 1. The majority's interpretation is flawed.

Contrary to the majority's holding, interpreting the KESP to require consent of a Participant before termination is consistent with the plain meaning of Section 1.1.4. Section 1.1.4 provides that "additional officers" may obtain Participant status as the Board "may from time to time specify [an officer] as being a Participant . . . ." In specifying that an employee *is* a Participant, the Board implicitly specifies that other employees—in particular, those employees that the Board fails to specify as being Participants—are *not* Participants. This implicit specification of employees that are *not* Participants does not imply, however, that by specifying an employee as *being* a Participant, the Board has the ability to specify that Participants can lose their Participant status. That is, the implicit conclusion that employees not named as Participants are not Participants is the extent to which the plain meaning of Section 1.1.4 allows the Board to specify an employee as not being a participant. Nevertheless, the majority opinion concludes that Section 1.1.4 allows the Board to specify that Participants must relinquish their Participant status. This interpretation reads into the phrase "specify as *being* a Participant" a substantive Board power, *i.e.*, the ability to specify as *not* being a

---

[1] When asked if an employee's rights vest upon being listed on Exhibit 1, WMI answered affirmatively. After responding "Yes" to that question, WMI proceeded to assert that the Board could remove the Participant without consent. WMI is thus arguing that despite the fact that KESP rights vest when an employee is listed on Exhibit 1, the Board can unilaterally remove a Participant.

19

Participant, even after an employee has obtained Participant status. Section 1.1.4 neither states nor implies that the Board can remove a Participant without that Participant's consent.

## C. Extrinsic evidence surrounding the KESP

The extrinsic evidence further supports Habets's interpretation of the KESP. The following facts arise from the summary-judgment evidence: (1) Getz's August 1992 memo suggests that WMI needed to obtain waivers from Participants to terminate their KESP rights; (2) WMI obtained a written waiver from Allman, the only other employee whose KESP rights WMI terminated during the regional consolidation; (3) WMI sent several letters to Habets suggesting that WMI recognized Habets continued to have KESP rights after the regional consolidation, and that Habets needed to give consent for WMI to terminate those rights; (4) WMI's earlier pleading states that Habets was a Participant "until the termination of the KESP by mutual agreement";[2] and (5) WMI sought to secure consent from other Participants before terminating their KESP rights. These facts establish the inference that the KESP precluded the Board from unilaterally terminating Habets's KESP rights.

WMI attempts to explain away these facts. Its explanations do not change the legal standard for summary judgment, however, that all inferences from underlying facts are to be drawn in favor of Habets. *See Matsushita Elec. Indus. Co. v. Zenith Radio Co.,* 475 U.S. 574, 587 (1986). Viewing this evidence in the light most favorable to Habets necessitates interpreting the KESP so that it precludes WMI from unilaterally terminating Habets's KESP rights. Summary judgment should have been denied. I respectfully dissent.

---

[2] Although a superceded pleading is not binding on a party under the judicial-estoppel doctrine, the court can still consider that pleading as rebuttable evidence. *Borel v. United States Cas. Co.*, 233 F.2d 385, 387-88 (5th Cir. 1956).