# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 22, 2011

Lyle W. Cayce
Clerk

No. 10-20395

ALKEK & WILLIAMS, LIMITED; ALBERT AND MARGARET ALKEK
FOUNDATION,

Plaintiffs - Appellants

v.

TUCKERBROOK ALTERNATIVE INVESTMENTS, L.P.;
TUCKERBROOK/SB GLOBAL SPECIAL SITUATIONS GP, L.L.C.;
TUCKERBROOK/SB GLOBAL SPECIAL SITUATIONS FUND, L.P.,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-3501

Before KING, DAVIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiffs–Appellants brought this breach of contract suit seeking to recover their capital accounts in Tuckerbrook/SB Global Special Situations Fund, L.P. as of May 31, 2008, the effective date of their alleged withdrawal from the partnership, together with fees and expenses allegedly wrongfully charged. The district court granted summary judgment in favor of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20395

Defendants–Appellees, reasoning that the event entitling Appellants to withdraw from the partnership as of May 31, 2008 had not occurred. We AFFIRM.

## I. FACTUAL & PROCEDURAL BACKGROUND

This case is a dispute over the provisions of the Limited Partnership Agreement (the "Agreement") that governs Tuckerbrook/SB Global Special Situations Fund, L.P. ("GSS"), a Delaware limited partnership and investment fund specializing in distressed assets. Under the Agreement, the management of GSS is vested exclusively in Tuckerbrook/SB Global Special Situations Fund GP, L.L.C. ("GSS GP"), the general partner of GSS. Tuckerbrook Alternative Investments, L.P. ("Tuckerbrook") is a managing member of GSS GP with a fifty percent ownership interest and serves as the investment manager and management company of GSS GP.[1]

Tuckerbrook hired Sumanta Banerjee to launch GSS and serve as its portfolio manager. As portfolio manager, Banerjee was responsible for the investment and management of GSS's capital. Banerjee was also a managing member with fifty percent ownership of GSS GP. GSS GP had no management agreement assigning management responsibilities between Banerjee and Tuckerbrook.

Plaintiffs–Appellants Alkek & Williams, Ltd. and the Albert and Margaret Alkek Foundation (collectively, "Alkek") are both limited partners in GSS and made capital contributions to GSS. One of the other limited partners in GSS was Tuckerbrook/SB Global Distressed Fund I, L.P. ("GDF"), a fund in which Tuckerbrook and Banerjee were also managing members. Under § 5.03 of the Agreement, Alkek and the other limited partners had a right to withdraw from GSS if

---

[1] This opinion refers to Defendants–Appellees Tuckerbrook, GSS, and GSS GP collectively as "Defendants."

2

No. 10-20395

Sumanta Banerjee dies, becomes incompetent or disabled (i.e., unable by reason of disease, illness or injury, to perform his functions as the managing member of the General Partner for 90 consecutive days), or ceases to be directly or indirectly involved in the activities of the General Partner.

On March 25, 2008, Tuckerbrook sent a letter to Alkek and the other limited partners in GSS notifying them that Banerjee had been terminated from his position as GSS's portfolio manager, but would continue to be a managing member of GSS GP. One month later, Alkek notified GSS that it was withdrawing from the partnership, stating that "Banerjee's lack of involvement in activities of [GSS GP]" had triggered its withdrawal rights under § 5.03 of the Agreement. The other limited partners, including GDF, also filed withdrawal notices under § 5.03. Defendants did not immediately act on these withdrawal notices, and Tuckerbrook ultimately declared GSS to be in dissolution in January 2009.[2]

Shortly before Tuckerbrook declared GSS to be in dissolution, Alkek filed the instant lawsuit in federal district court on the basis of diversity jurisdiction. Alkek claimed that Defendants had breached the Agreement by failing to return Alkek's capital accounts in GSS after Alkek sent in its withdrawal notice and by charging Alkek management fees after its withdrawal from GSS became effective. Alkek also sought a declaratory judgment from the district court stating that it was entitled to withdraw from GSS effective May 31, 2008 (one month after it had tendered its withdrawal notice) and sought an accounting of the value of Alkek's capital accounts on that date.

Defendants filed a motion for summary judgment, arguing that Banerjee's removal from the position of portfolio manager did not trigger Alkek's

---

[2] Shortly after Banerjee was fired, Tuckerbrook sued Banerjee in the District of Massachusetts to enforce a non-compete agreement in his employment contract. In September 2008, after months of fractious litigation, Banerjee and Tuckerbrook reached a settlement, under which Banerjee relinquished his fifty percent interest in GSS GP.

3

No. 10-20395

withdrawal rights under § 5.03. The district court denied this motion without prejudice to allow for additional discovery into whether Banerjee was involved in the activities of GSS GP after he was terminated from his position as portfolio manager of GSS. After discovery, Defendants filed a second motion for summary judgment on the same basis as the first. In response, Alkek argued there was a genuine dispute over whether Banerjee had remained involved in GSS GP for purposes of § 5.03 of the Agreement. Alkek also argued that, under the doctrine of quasi-estoppel, Defendants could not dispute whether Banerjee's termination triggered § 5.03 because Tuckerbrook itself submitted a § 5.03 withdrawal notice in its capacity as a managing member of GDF after Banerjee was fired. Relatedly, Alkek argued that Defendants could not dispute the validity of the withdrawal notice because they did not explicitly reject Alkek's notice when it was tendered in April 2008.

In a thorough, well-reasoned memorandum opinion and order, the district court granted summary judgment in favor of Defendants. The district court noted that, although Banerjee's termination "demonstrably deflated" his managing authority over GSS GP, Banerjee remained active in the management of GSS GP. The district court rejected Alkek's quasi-estoppel argument, stating that Tuckerbrook did not benefit from submitting GDF's withdrawal notice and Alkek was not harmed by the notice. The district court also concluded that Tuckerbrook's failure explicitly to reject the limited partners' withdrawal notices when they were submitted did not create a genuine dispute over the validity of the withdrawals. Alkek appealed the district court's grant of summary judgment in Defendants' favor.

## II. LEGAL STANDARDS

This court "review[s] the grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party." *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 786 (5th Cir. 2010). Summary judgment is proper

4

No. 10-20395

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## III.  GOVERNING LAW

In this diversity action, we apply Texas choice-of-law principles to determine which law governs. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under those principles, Delaware substantive law governs this contract dispute because the Agreement has an undisputedly valid choice of law provision selecting Delaware law to govern the Agreement. *See Monsanto Co. v. Boustany*, 73 S.W.3d 225, 229 (Tex. 2002).

## IV.  ANALYSIS

### A.    The Agreement's Withdrawal Provision

Under Delaware law, "[w]hen the contract is clear and unambiguous, [courts] will give effect to the plain-meaning of the contract's terms and provisions." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010). As noted above, § 5.03 of the Agreement gave the limited partners the right to withdraw from GSS if Banerjee "ceases to be directly or indirectly involved in the activities of [GSS GP]."  The district court defined the term "involved" in this phrase to mean "to engage as a participant."  This definition was proposed by Defendants and accepted by Alkek.  Accordingly, summary judgment was inappropriate if there was a genuine dispute over whether Banerjee had ceased to directly or indirectly "engage as a participant" in the activities of GSS GP.

#### 1.    *Banerjee's Involvement*

The district court thoroughly documented Banerjee's participation in GSS GP immediately after his termination—and in the months that followed—and concluded that Banerjee "remained both directly and indirectly involved in the management of GSS GP."  The record fully supports this conclusion.  In its letter advising the limited partners of Banerjee's termination, Tuckerbrook noted that he would continue to be a managing member of GSS GP.  Within days of his

5

termination, Banerjee corresponded with the limited partners in GSS, counsel for GSS, GSS's administrator, and GSS's bank, stating that GSS GP could not act without his approval because he retained authority as a managing member and fifty percent owner of GSS GP. Shortly after this flurry of communication, GSS's administrator, Michael J. Liccar & Co., CPAs ("Liccar"), took the position that it could not make disbursements to Tuckerbrook or take other actions without Banerjee's approval.

Alkek argues that Tuckerbrook had successfully frozen Banerjee out of GSS GP by removing him from the position of portfolio manager, denying Banerjee access to GSS GP's books, reports and statements, unilaterally communicating with the limited partners, and attempting to execute separate investment management agreements with the limited partners and GSS GP that formalized Tuckerbrook's previous duties as investment manager. As the events of the months following Banerjee's termination demonstrate, however, these efforts to exclude Banerjee from participation were nugatory. Banerjee obtained a court order to resume access to GSS GP's books and records. Tuckerbrook was unable to collect management fees from Liccar without Banerjee's approval. Liccar required Banerjee's approval prior to releasing financial statements on behalf of GSS GP. Despite Tuckerbrook's directions to do so, Liccar refused to write off one of GSS's investments without Banerjee's approval. Banerjee also advised the limited partners on the proposed redemption of investments. All of this evidence competently demonstrates that, as the district court put it, "even to the extent that Tuckerbrook might not have wanted Banerjee to maintain any authority regarding GSS, Banerjee did in fact exert his influence." Thus, there is no genuine dispute over whether Banerjee remained directly and indirectly involved in the activities of GSS GP.

*2.    The Agreement's Ambiguity*

Alkek also argues that the district court erred in granting summary judgment because § 5.03 is ambiguous.[3]  "[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings".  *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992). Alkek argues that summary judgment was inappropriate because the relevant portion of § 5.03 could reasonably be read as allowing the limited partners to withdraw if Banerjee ceases to be either (1) directly involved in the activities of GSS GP as portfolio manager of GSS, or (2) indirectly involved in the activities of GSS GP as a managing member of GSS GP.

This interpretation is unnecessarily narrow.  The language at issue in this appeal focuses Banerjee's involvement *vel non*; it does not hinge on his title as portfolio manager of GSS.  If Banerjee's removal from the position of portfolio manager was to be sufficient to trigger the limited partners' withdrawal rights, such a term would have been stated in the Agreement.  *See id.* ("Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty.").

Furthermore, Alkek's proposed reading incorrectly suggests that the portfolio manager is the only party that exerts direct control over the activities of GSS GP.  Under the Agreement, both the portfolio manager and GSS GP (and therefore the managing members of GSS GP) exert authority over the activities of GSS GP.  The Agreement vests the portfolio manager with the responsibility

---

[3] Defendants argue that Alkek waived this argument because Alkek raised it in its response to Defendants' first motion for summary judgment but failed to raise it again in response to Defendants' second motion for summary judgment.  Because we dispose of Alkek's issue on the merits, we need not decide this issue.

of allocating the amount of time GSS GP will spend on certain matters, but it does not diminish the enumerated powers of GSS GP. These enumerated powers include, among other things, providing investment strategies to the limited partners, making reports to the limited partners, collecting fees, and closing accounts, all of which are activities Banerjee participated in after his termination as portfolio manager.

Alkek has a further argument (which appeared only periodically in the district court) about the phrase "ceases to be directly or indirectly involved" in the activities of GSS GP that can only be described as strained. It is enough to say that the words "direct" and "indirect" are obviously intended to clarify that the word "involved" has a broad scope. Alkek's reading of § 5.03 is unreasonable and does not create the type of contract ambiguity that requires reversal of the district court's order granting summary judgment.

## B.   Quasi-estoppel

Alkek next argues that Tuckerbrook may not challenge whether § 5.03 of the Agreement has been triggered because Tuckerbrook submitted a withdrawal notice on behalf of GDF and did not the reject the limited partners' withdrawal notices when they were filed. Citing *Personnel Decisions, Inc. v. Bus. Planning Sys., Inc.*, No. 3213-VCS, 2008 WL 1932404 (Del Ch. May 5, 2008), among other cases, Alkek argues that the Delaware doctrine of quasi-estoppel precludes a party from taking a position in a lawsuit that is inconsistent with a prior position taken by that party and that resulted in either a benefit to that party or a disadvantage to the opposing party.[4] The district court assumed, without deciding, that Tuckerbrook had taken inconsistent positions and concluded that

---

[4] The parties agree that the doctrine of quasi-estoppel involves a benefit to the party asserting the inconsistent position and a disadvantage to the opponent. The sole dispute over the doctrine is whether one or both elements must be proven to invoke the doctrine successfully. We need not resolve this dispute because Alkek has failed to prove either a detriment to itself or a benefit to Tuckerbrook.

No. 10-20395

Alkek had not proven either a benefit to Tuckerbrook or a detriment to Alkek.

Although Alkek claims Tuckerbrook benefitted from filing a withdrawal notice on GDF's behalf because it earned fees from managing GDF and risked being sued by GDF if it did not file the withdrawal notice, we agree with the district court. There is no evidence in the record to suggest that Tuckerbrook's management fees were contingent upon filing GDF's withdrawal notice, and, because the withdrawal notices were never honored, there is no evidence from which to conclude that Tuckerbrook would have been sued if it had not filed the withdrawal notice.

Alkek also argues that Tuckerbrook harmfully induced Alkek to rely on the validity of Alkek's withdrawal notice. As the district court correctly observed, however, Alkek could not have assumed its withdrawal notice was valid based on GDF's submission of a withdrawal notice because Alkek was not aware that GDF had submitted a withdrawal notice until after commencing the instant lawsuit. Alkek has not pointed to any other harm GDF's withdrawal notice could have caused. Nor did Tuckerbrook's failure explicitly to deny Alkek's withdrawal notice in its capacity as managing member of GSS GP damage Alkek. None of Tuckerbrook's communications to the limited partners stated that the withdrawal notices were valid. Assuming Alkek was entitled to rely on the validity of its withdrawal notice, Alkek has not elaborated on how such reliance was to its detriment. Therefore, the district court correctly concluded that Defendants could not be estopped from challenging the validity of Alkek's withdrawal notice.

## V. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.